**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


ZURICH AMERICAN INSURANCE
COMPANY,

        Plaintiff,

                                Case No.  3:15-cv-1041-J-34PDB

vs.

SOUTHERN-OWNERS INSURANCE
COMPANY,

        Defendant.

                                 /

## O R D E R

**THIS CAUSE** is before the Court on Defendant, Southern-Owners Insurance Company's Motion to Dismiss Zurich American Insurance Company's Second Amended Complaint for Failure to State a Cause of Action (Doc. 49; Motion), filed on September 1, 2016.  Plaintiff, Zurich American Insurance Company (Plaintiff or ZAIC), filed a response on September 15, 2016.  See Plaintiff, Zurich American Insurance Company's, Response to Defendant, Southern-Owners Insurance Company's, Motion to Dismiss Zurich's Second Amended Complaint [sic] (Doc. 51; Response).  Thereafter, Defendant, Southern-Owners Insurance Company (Defendant or SOIC), filed a reply on October 18, 2016.[1]  See Defendant, Southern-Owners Insurance Company's Reply to Plaintiff, Zurich's Response to Defendant's Motion to Dismiss (Doc. 54; Reply).  Pursuant to a Court order entered on January 30, 2017, directing the parties to submit supplemental briefs to address whether

---

[1]      Defendant sought leave to file a reply on September 29, 2016, see Parties Joint Agreed Motion for Leave to File Replies (Doc. 52), which the Court granted on October 3, 2016, see Order (Doc. 53).

ZAIC's claim for declaratory relief presents a claim or controversy appropriate for judicial action, <u>see</u> Order (Doc. 61; Order), ZAIC and SOIC each filed supplemental briefs on February 9, 2017, <u>see</u> Defendant Southern-Owners Insurance Company's Supplemental Brief Per January 30, 2017 Court Order (Doc. 64; SOIC Supplemental Brief), and Plaintiff, Zurich American Insurance Company's Supplemental Briefing on Count I of its Complaint (Doc. 65; ZAIC Supplemental Brief).  Accordingly, this matter is ripe for review.

## I.     Background

This dispute between two insurers arises from an underlying premises liability action, Case No. 2012-CA-13359 (Underlying Action), filed by Charles McMillan (McMillan) in the Circuit Court, Fourth Judicial Circuit, In and For Duval County Florida.  <u>See</u> Plaintiff, Zurich American Insurance Company's Second Amended Complaint (Doc. 42; Second Amended Complaint), Ex. D: McMillan's Second Amended Complaint in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, Case No. 2012-CA-13359 (Underlying Complaint).  In the Underlying Action, McMillan asserted negligence claims against Catamount Constructors, Inc. (Catamount) and Duval Concrete Contracting, Inc. (Duval; collectively, Underlying Defendants).  <u>See generally</u> Underlying Complaint.  ZAIC "resolved the Underlying Action on behalf of Catamount."   <u>See</u> Second Amended Complaint ¶ 19.  In the instant action, ZAIC seeks a declaration that SOIC owed a duty to defend and indemnify Catamount in the Underlying Action, and also brings claims for equitable subrogation or, in the alternative, common law contribution against SOIC, based on the following facts as alleged in the Second Amended Complaint and the attached exhibits.  <u>See generally</u> <u>id.</u>

**A.  The Subcontract Between Catamount and Duval**

Catamount served as the general contractor for a construction project in which it contracted to furnish and install a complete gravel/sand sub-base package (the project) at the Dr. Pepper West Point Trade Center, a distribution warehouse, located at 2300 Pickettville Road, Jacksonville, Florida 32220 (the Site).  See Second Amended Complaint ¶¶ 6-7; Ex A: Subcontract Agreement Between Catamount and Duval (Subcontract) at 1. On April 12, 2012, Catamount and Duval executed the Subcontract, whereby Duval agreed to "furnish[ ] all labor, materials, tools, equipment and insurance necessary to" complete the project.  See Second Amended Complaint ¶ 7.  The terms of the Subcontract required Duval to maintain liability insurance naming Catamount as an additional insured, and providing primary coverage, for any liability arising from Duval's work.  Id. at ¶ 8; Subcontract at ¶ 11, Attachment C.  Specifically, the Subcontract provides:

> **Paragraph 11. Insurance**.  Subcontractor shall comply with the insurance requirements as set forth in ATTACHMENT "C" prior to commencing work on the above referenced Project.
>
> **Attachment C: Subcontract Agreement Insurance Requirements**
>
> Subcontractor hereby agrees to maintain throughout the progress of the Work and to provide evidence of coverage for the following insurance:
>
> **Commercial General Liability**
>
> | | |
> |---|---|
> | General aggregate for this project | 2,000,000 |
> | Products/Completed Operations aggregate | 1,000,000 |
> | Personal and Advertising Injury | 1,000,000 |
> | Each occurrence | 1,000,000 |
>
> Coverages to be included: Contractual liability, Explosion, Collapse and Underground (XCU), Independent Contractors Coverage, Personal Injury (Agreements A, B, and C), including coverage for suits brought by employees of sub-subcontractors.

3

> Coverage shall be written on an occurrence basis. <u>Subcontractor's insurance shall be primary</u>. Completed operations coverage shall remain in effect for at least two (2) years after substantial completion of the project. <u>Catamount Constructors, Inc.-Atlanta shall be added and endorsed as a named additional insured on the policy</u>.

(emphasis supplied). Accordingly, Duval agreed to have Catamount named as an additional insured under its commercial general liability policy.

### B. Duval's Policy with SOIC

As per the Subcontract, Duval purchased a commercial general liability policy from SOIC, effective from June 15, 2011, through June 15, 2012, <u>see</u> Second Amended Complaint ¶ 9, Ex B: Southern-Owners Insurance Company's Certified General Liability Insurance Policy No. 072322-78005160-11 (SOIC Policy), with a blanket additional insured endorsement, <u>see</u> SOIC Policy, Endorsement CGL 55372 (1-07) (Endorsement). The Endorsement provides that "[a] person or organization is an Additional Insured, only with respect to liability arising out of "your work" for that Additional Insured by or for you [Duval]… If required in a written contract or agreement." <u>See</u> Endorsement. The SOIC Policy defines "your work" as "(1) [w]ork or operations performed by you [Duval] or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations." <u>See</u> SOIC Policy, Definitions. The Endorsement specifies that the "insurance is primary for the Additional Insured, but only with respect to liability arising out of 'your work' for that Additional Insured by or for you. Other insurance available to the Additional Insured will apply as excess insurance and not contribute as primary insurance to the insurance provided by this endorsement." <u>See</u> Endorsement. Accordingly, ZAIC alleges Catamount is an additional insured under the SOIC Policy. <u>See</u> Second Amended Complaint ¶¶ 15, 23-24.

### C.  Catamount's Policy with ZAIC

ZAIC issued a commercial insurance policy to Catamount, effective from March 1, 2012 through March 1, 2013.  See Second Amended Complaint, Ex C: Zurich American Insurance Company's Policy No. GLA 5490400-00 (ZAIC Policy).   The ZAIC Policy provided excess insurance "over [a]ny other primary insurance available to you [Catamount] covering liability for damages arising out of the premises or operation, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement." See ZAIC Policy, Commercial General Liability Form, Section IV – Commercial General Liability Conditions, 4. Other Insurance.  ZAIC alleges that "[p]ursuant to the terms and conditions of the Subcontract and the terms and conditions of the SOIC Policy and the ZAIC Policy, SOIC [wa]s the primary insurer for Catamount, and the ZAIC Policy [wa]s … excess to the SOIC [P]olicy." See Second Amended Complaint ¶ 26.

### D.  The Underlying Complaint

In the Underlying Complaint, McMillan alleged that on May 30, 2012, he "slipped and fell due to an accumulation of debris as he walked … towards a port-o-let[2] where Defendant Catamount had begun construction work and established a construction site," and where "Duval had previously begun concrete cutting." See Underlying Complaint ¶¶ 28, 37.  McMillan alleged that "[t]he accumulation of debris … was a defectively dangerous condition and/or the causes and/or origins thereof were created by and/or known to … [the Underlying Defendants], or had existed for a sufficiently long period of time that … [the

---

[2]     A "port-o-let" is a portable toilet enclosure.  See Hood v. Metro Indus. Corp., 806 So. 2d 848, 850 (La. App. 1 Cir. 2001).

Underlying Defendants], in the exercise of reasonable care, should have known of." Id. at ¶ 30.  McMillan claimed that Catamount and Duval, "for themselves or by and through their respective agents, employees or servants acting within the course and scope of their respective employments and authorities," caused McMillan's injuries by breaching their duties of care.  Id. at ¶¶ 31-32, 40-41.  Specifically, the Underlying Defendants allegedly breached their duties by:  (1) "failing to properly instruct" their employees and agents "as to the proper care and maintenance" of the [S]ite; (2) "failing to provide reasonable and adequate warnings of the actually or constructively known dangerous condition(s)"; (3) "failing to operate or maintain the premises in a reasonably safe condition"; and (4) "failing to maintain" the area where McMillan slipped by "failing to provide a safe, slip-free walkway surface."  Id. at ¶¶ 31, 40

### E. Catamount's Request for a Defense

ZAIC initially assumed Catamount's defense because it "was not aware at that time that Catamount was a primary insured under the SOIC Policy."  See Second Amended Complaint ¶ 15.  On April 15, 2014, pursuant to the Subcontract, ZAIC tendered the defense and indemnity of Catamount to Duval and requested that Duval notify its insurer. See Second Amended Complaint ¶ 16, Ex. E: Letter dated April 15, 2014, from Tom Finch, Claim Specialist, with Zurich American Insurance Company to Duval Concrete Contracting (First Request).  After ZAIC learned that SOIC issued a commercial general liability policy to Duval, ZAIC made a second tender to Duval, and a first tender to SOIC, on June 22, 2015.  See Second Amended Complaint ¶ 17, Ex. F: Letter dated June 22, 2015 from Michele Mecca, MCU Specialist With Zurich American Insurance Company to O'Hara Law Firm, Southern-Owners Insurance Company and All Lines Insurance Agency, Inc. (Second

Request).  SOIC denied the Second Request on July 30, 2015.  <u>See</u> Second Amended Complaint ¶18, Ex. G: Letter dated July 30, 2015 from Mark F. Shannahan, AIC, with Southern-Owners Insurance Company to Michele Mecca, with Zurich American Insurance Company (SOIC Denial).

### F.  The Instant Action

Shortly after receiving the SOIC Denial, ZAIC initiated this action by filing a complaint on August 21, 2015.  <u>See</u> Plaintiff, Zurich American Insurance Company's Complaint for Declaratory Judgment (Doc. 1; Initial Complaint).  ZAIC filed its first amended complaint on September 14, 2015.  <u>See</u> Plaintiff, Zurich American Insurance Company's Amended Complaint for Declaratory Judgment (Doc. 5; Amended Complaint).  After ZAIC "resolved the Underlying Action on behalf of Catamount" for a confidential amount, <u>see</u> Second Amended Complaint ¶ 19, it sought leave to drop McMillan as a defendant and file a second amended complaint, <u>see</u> Plaintiff's Corrected Motion for Leave to File Second Amended Complaint and to Drop Party Defendant Charles McMillan (Doc. 27), which the Court granted on August 15, 2016, <u>see</u> Clerk's Minutes (Doc. 43).  Accordingly, ZAIC filed the Second Amended Complaint on August 16, 2016.  <u>See</u> Second Amended Complaint. In Count I of the Second Amended Complaint, ZAIC seeks a declaration pursuant to 28 U.S.C. § 2201 that SOIC, as Catamount's primary insurer, had a duty to defend and indemnify Catamount in the Underlying Action.  <u>Id.</u> at 7-9.  ZAIC also seeks reimbursement for all defense costs and indemnity payments made in resolving the Underlying Action from SOIC on a theory of equitable subrogation (Count II), <u>id.</u> at 9-10, or in the alternative, on a theory of common law contribution (Count III), <u>id.</u> at 10-11.  SOIC moves to dismiss all three Counts of the Second Amended Complaint under Rule 12(b)(6) of the Federal Rules

of Civil Procedure (Rule(s)).  <u>See generally</u> Motion.  Specifically, SOIC argues that Count I should be dismissed because in the Underlying Action, McMillan sued Catamount for an uncovered injury.  <u>Id.</u> at 15-20.  Additionally, SOIC argues that Count II of the Second Amended Complaint should be dismissed because ZAIC fails to plead all of the requisite elements.  <u>Id.</u> at 21-22.  Finally, SOIC submits that Count III of the Second Amended Complaint should be dismissed because Florida law does not recognize common law contribution claims.  <u>Id.</u> at 22-23.

## II.    Standard of Review

SOIC seeks to dismiss Counts I, II, and III of the Second Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  <u>Id.</u> at 1.  In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.[3]  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  <u>See</u> <u>Omar ex. rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).   Nonetheless, the plaintiff must still meet some minimal pleading requirements.  <u>Jackson v. Bellsouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is

---

[3]     On a motion to dismiss, the Court's consideration is limited to those facts contained in the complaint and the attached exhibits.  <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1199 (11th Cir. 2007).  Under Rule 10(c), "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." <u>Solis-Ramirez v. U.S. Dep't of Justice</u>, 758 F.2d 1426, 1430 (11th Cir. 1985); <u>see also</u> Fed. R. Civ. P. 10(c) (the exhibits are part of the pleading "for all purposes").  Additionally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." <u>Griffin Indus.</u>, 496 F.3d at 1206.

and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678-79.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

Although Rule 12(b)(6) is the appropriate vehicle through which to review the sufficiency of Counts II and III of the Second Amended Complaint, SOIC's challenge to Count I is more appropriately viewed as an attack on the Court's subject matter jurisdiction pursuant to Rule 12(b)(1).  See Vandenbrink v. Voneschen, 542 F. App'x 728, 729 (11th Cir. 2013) (vacating a dismissal for failure to state a claim and remanding with instructions to dismiss for lack of subject matter jurisdiction because the complaint presented a

"controversy not ripe for judicial review.");[4] United States ex rel. Body v. Blue Cross & Blue Shield of Ala., Inc., 156 F.3d 1098, 1101  n.7 (11th Cir. 1998) (treating a district court's summary judgment ruling that disposed of a case due to a lack of subject matter jurisdiction as a dismissal under Rule 12(b)(1)); Hendrix v. Poonai, 662 F.2d 719, 722 (11th Cir. 1981) (affirming a dismissal for lack of subject matter jurisdiction where the complaint did not present a live controversy under Article III of the United States Constitution or the Declaratory Judgment Act); Am. Safety Indem. Co. v. Fairfield Shopping Ctr., LLC, No. 2:12-cv-02415-SGC, 2014 WL 6607940, at *2 n.2 (N.D. Ala. Nov. 20, 2014) (noting that although the defendant moved to dismiss under Rule 12(b)(6), its argument that no justiciable controversy existed was "actually challenge to the court's subject matter jurisdiction.").  Although SOIC did not initially argue that the Court lacks subject matter jurisdiction, "[i]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking."  Fairfield Shopping Ctr., 2014 WL 6607940 at *5; see also Wendy's Int'l, Inc. v. City of Birmingham, 868 F.2d 433, 435 (11th Cir. 1989) (vacating a district court's summary judgment award on the basis of its sua sponte inquiry into whether the dispute at issue ripened into a case or controversy); Provident Life & Accident Ins. Co. v. Transamerica-Occidental Life Ins. Co., 850 F.2d 1489, 1490 n.3 (11th Cir. 1988) (stating that the parties' failure to address whether the case presented a live controversy did "not 'preclude th[e] court from uncovering fatal jurisdictional defects.'") (citation omitted).  Moreover, in SOIC's Supplemental Brief, SOIC asserts that the Court should dismiss Count I of the Second Amended Complaint for lack

---

[4]     "Although an unpublished opinion is not binding …, it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

of subject matter jurisdiction.  See SOIC Supplemental Brief at 2-6.  Accordingly, the Court

will first review SOIC's challenge to Count I of the Second Amended Complaint for

declaratory judgment pursuant to Rule 12(b)(1).

A challenge to a complaint under Rule 12(b)(1) may require a different standard of

review than a challenge under Rule 12(b)(6) depending on whether the attack is "facial" or

"factual."  See Morrison v. Amway, Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citing

Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)).

> If the challenge is facial, "the plaintiff is left with safeguards similar to those
> retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim
> is raised."  [Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)[5]].
> Accordingly, "the court must consider the allegations in the plaintiff's
> complaint as true."  A "facial attack" on the complaint "require[s] the court
> merely to look and see if [the] plaintiff has sufficiently alleged a basis of
> subject matter jurisdiction, and the allegations in his complaint are taken as
> true for the purposes of the motion."  [Lawrence, 919 F.2d 1525 at 1529]
> (quoting Menchacha v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.
> 1980)).  "Factual attacks," on the other hand, challenge "the existence of
> subject matter jurisdiction in fact, irrespective of the pleadings, and matters
> outside the pleadings, such as testimony and affidavits are considered."  Id.
> Furthermore, in Williamson, the former Fifth Circuit held that "[t]he district
> court has the power to dismiss for lack of subject matter jurisdiction on any
> of three separate bases: (1) the complaint alone; (2) the complaint
> supplemented by undisputed facts evidenced in the record; or (3) the
> complaint supplemented by undisputed facts plus the court's resolution of
> disputed facts."  Williamson, 645 F.2d at 413.

McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir.

2007).  In the Motion, SOIC's challenge focuses on the allegations in the Second Amended

Complaint and the attached exhibits.  Accordingly, the Court views this as a facial attack,

and affords ZAIC the same protections to which it would be entitled under Rule 12(b)(6).

That is, the Court will limit the scope of its review to the allegations contained in the Second

---

[5]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Amended Complaint and the attached exhibits, and accept those factual allegations as true.

## III.   Analysis

### A. Declaratory Judgment

"The declaratory judgment remedy is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and adjudication would serve a useful purpose." Allstate Ins. Co. v. Emp'rs Liab. Assurance Corp., 445 F.2d 1278, 1280 (5th Cir. 1971). As stated by the court in Golden v. Zwickler, 394 U.S. 103, 89 S. Ct. 956, 22 L. Ed.2d 113 (1969):

> "The federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite. This is as true of declaratory judgments as any other field." United Pub. Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 89, 67 S. Ct. 556, 564, 91 L. Ed. 754 (1947). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941).

Golden, 394 U.S. at 108, 89 S. Ct. at 959. In other words, "[t]he statutory standard for determining whether an 'actual controversy' exists within the meaning of the Declaratory Judgment Act is the same as that under the 'case or controversy' requirement of the Constitution." Hendrix, 662 F.2d at 721; see also Provident Life & Accident Ins. Co., 850 F.2d at 1491 ("the jurisdictional limits under the Declaratory Judgment Act mirror those found [in the] Constitution …"). Accordingly, because the "actual controversy" requirement

is jurisdictional, "a threshold question in an action for declaratory relief must be whether a justiciable controversy exists." U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 747 (11th Cir. 1991).  Notably, the party seeking a declaratory judgment bears the burden "of establishing the existence of an actual case or controversy." Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95, 113 S. Ct. 1967, 1974, 124 L. Ed.2d 1 (1993). This means that:

> [a]t an irreducible minimum, the party who invokes the court's authority under Article III must show: (1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision.

Caulkins Indiantown Citrus Co., 931 F.2d at 747 (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 472, 102 S. Ct. 752, 758, 70 L. Ed.2d 700 (1982)); see also GTE Directories. Publ'g Corp. v. Trimen Am., Inc., 67 F.3d 1563, 1567 (11th Cir. 1995).  "In addition, the controversy must be 'live' throughout the case; federal jurisdiction is not created by a previously existing dispute." Caulkins Indiantown Citrus Co., 931 F.2d at 747.  As such, the Eleventh Circuit has recognized that:

> [c]ourts have found the case or controversy requirement lacking when the plaintiff has no interest in the case, when the defendant has no interest in the case, when no conflict exists in the case, when there is no adverse claimant, when there is no conflict in the case because of a defect in the parties and when there is no legal relationship between the parties.

Provident Life & Accident Ins. Co., 850 F.2d at 1491.  Therefore, on a motion to dismiss, the Court must consider "'whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" GTE Directories. Publ'g Corp., 67 F.3d at 1567 (citation omitted); see also Tower Ins. Co. of

N.Y. v. Rainbow Granite & Marble, Inc., No. 10-600520CV, 2010 WL 1740700, at *2 (S.D. Fla. Apr. 29, 2010).

In the instant matter, ZAIC fails to satisfy its burden of establishing that its claim for declaratory relief against SOIC constitutes an actual case or controversy appropriate for judicial resolution.  Specifically, ZAIC fails to plead the existence of a legal relationship between the parties as well as an ongoing live controversy with respect to its request for declaratory relief.  As such, Count I is due to be dismissed for lack of subject matter jurisdiction.

ZAIC's claim for declaratory relief is defective because, based on the pleadings before the Court, no legal relationship exists between the parties.  The Eleventh Circuit addressed the nature of relationships in the insurance context in Provident Life & Accident Ins. Co., where it noted that although an insurer has a legal relationship with its insured, an insurer does not have a legal relationship with another insurer by virtue of sharing a common insured.  850 F.2d at 1491.  Hence, although courts have Article III case or controversy jurisdiction to consider claims between insurers and their insureds, absent some legal basis for an assertion of rights between two insurers, courts lack jurisdiction to adjudicate claims solely between the insurers.  Id.; see also Progressive Express Ins. Co. v. Overdrive Specialized, Inc., No. 3:14-cv-138-MCR/EMT, 2014 WL 11512202, at *3 (N.D. Fla. Dec. 24, 2014) (finding a definite and substantial controversy in a declaratory judgment action filed by one insurer against another insurer because their common insured had been joined).

Here, ZAIC and SOIC's common insured, Catamount, is not, and has never been, a party to this action.  ZAIC contends that this deficiency does not deprive the Court of

Article III case or controversy jurisdiction for three reasons.  First, ZAIC argues that this defect is not fatal to its claim because it initially named McMillan, the plaintiff in the Underlying Action, as a defendant in this action.  The Court finds this argument unpersuasive because even if ZAIC and McMillan have a legal relationship, the Court would still lack jurisdiction at this stage of the proceeding because ZAIC dropped all claims against McMillan on August 15, 2016, see Clerk's Minutes, which renders ZAIC's declaratory judgment claim with regard to McMillan moot.  "'An issue becomes moot and hence no longer justiciable where as a result of intervening circumstances there are no longer adverse parties with sufficient legal interests to maintain the litigation.'"  Hollon v. Mathis Indep. Sch. Dist., 491 F.2d 92, 93 (5th Cir. 1974) (citation omitted).  Even assuming, arguendo, that the Court had Article III case or controversy jurisdiction over ZAIC's declaratory judgment claim at the outset of the instant action, "it is not sufficient that the controversy was only live at its inception."  Bankwest, Inc. v. Baker, 446 F.3d 1358, 1364 (11th Cir. 2006) (citation omitted).  As noted, "the controversy must be 'live' throughout the case." Caulkins Indiantown Citrus Co., 931 F.2d at 747; see also Golden, 394 U.S. at 108 ("The District Court erred in holding that Zwickler was entitled to declaratory relief if the elements essential to relief existed '(w)hen this action was initiated.'  The proper inquiry was whether a 'controversy' requisite to relief under the Declaratory Judgment Act existed at the time of the hearing on remand.").  Accordingly, "[a]n action which has become moot at any stage of the proceedings is not a case or controversy and must be dismissed for lack of jurisdiction."  St. Paul Fire & Marine Ins. Co. v. Jablonski, Jr., No. 2:07-cv-386-FtM-29SPC, 2008 WL 1990471, at *2 (M.D. Fla. May 5, 2008).  Thus, even if McMillan's joinder

created a live controversy at the start of the litigation, ZAIC's dismissal of all claims against McMillan renders its claim of declaratory judgment moot.

Additionally, ZAIC argues that its failure to join Catamount is not fatal to its claim for declaratory relief because it has a legal relationship with SOIC by virtue of its demand for coverage prior to the commencement of this lawsuit. See ZAIC Supplemental Brief at 9-10. As a policy matter, courts in the Eleventh Circuit "prefer insurers to pay the insured, and then argue over which insurer is liable." Provident Life & Accident Ins. Co., 850 F.2d at 1491-92. Nevertheless, in order to create the legal relationship necessary to establish an actual controversy, insurers must "reserve the right to proceed against other insurers that may be liable to the insured" in an "unambiguous agreement" that "clearly evinces their intention to reserve and not to forego a later adversary determination of their respective rights and liabilities." Id. at 1492 (citation omitted). For example, in Allstate Ins. Co., 445 F.2d at 1281, the insurers' voluntary payments, "accompanied by a full reservation of rights … as between themselves," did not extinguish their right to seek a declaration as to their rights and liabilities vis-à-vis each other. In contrast, in Provident Life & Accident Ins. Co., the Eleventh Circuit Court of Appeals found that the district court lacked jurisdiction to adjudicate a dispute between two insurers because "no legal relationship exist[ed] on which to bring an action" in the absence of an agreement. 850 F.2d at 1493. ZAIC attempts to distinguish the instant action from Provident Life & Accident Ins. Co. by arguing that it disputed its coverage obligations "in multiple letters" before filing the Initial Complaint, and thereby reserved its right to pursue the instant action. See ZAIC Supplemental Brief at 9-10. In support of this, ZAIC cites to its First Request, addressed only to Duval, in which it stated:

> Please note that under the [S]ubcontract or applicable policy
> language, your coverage is primary coverage available to your
> additional insured for this loss, and our coverage may apply only on
> an excess basis.  By this letter, we notify you that to the extent we
> advance or have advanced any amounts toward the defense or
> indemnification of our insured in this action, we hereby seek
> contribution from you for all such amounts to which we or our insured
> are entitled under the [S]ubcontract, your policy and applicable law.

See First Request at 1.   ZAIC attached the First Request to the Second Request,

addressed to Duval and SOIC, in which it requested that SOIC defend and indemnify

Catamount.  See Second Request at 1, 4.

Although ZAIC disputed its coverage obligations prior to commencing this suit, these

demand letters do not preserve its right to seek a declaration regarding its rights and

liabilities.  Not only do these letters fail to distinguish the instant action from Provident Life

& Accident Ins. Co., but in fact, the letters harmonize the two cases.  In Provident Life &

Accident Ins. Co., Transamerica-Occidental Life Insurance Co. (Transamerica), sent two

coverage request letters to Provident Life and Accident Co. (Provident) before the

declaratory judgment action commenced.  850 F.2d at 1490.  Yet, despite these letters,

the court found that the parties had not come to an "unambiguous agreement" to later

determine their respective rights and obligations necessary to establish Article III case or

controversy jurisdiction.  Id. at 1492.[6]  Thus, ZAIC's argument that the instant action is

distinguishable from Provident Life & Accident Ins. Co. merely because it disputed its

coverage obligations before commencing the lawsuit is misplaced.  Further, ZAIC's

argument fails because these demand letters provide no indication of ZAIC's "intention to

---

[6]     The Court notes that in Provident Life & Accident Ins. Co., Provident, the recipient of the request
letters, commenced the declaratory judgment action, 850 F.2d at 1490, whereas here, ZAIC, the sender of
the request letters, filed the Initial Complaint.  However, this does not meaningfully distinguish the instant
action from Provident Life & Accident Ins. Co..

reserve and not to forego a later adversary determination of [its] respective rights and liabilities," let alone "clearly evince[ ]" such an intention. <u>Provident Life & Accident Ins. Co.</u>, 850 F.2d at 1492. Indeed, in the First Request, ZAIC stated that it "hereby," meaning in the letter, sought contribution from Duval. <u>See</u> First Request at 1. Similarly, in the Second Request, ZAIC "strongly recommended" and "demanded" that SOIC defend and indemnify Catamount, <u>see</u> Second Request at 4, but did not indicate any consequences of SOIC's failure to do so. Rather, ZAIC expressed its "desire to work cooperatively with Duval and [SOIC]," and its confidence that SOIC felt the same. <u>Id.</u> The Court does not find that ZAIC's request letters reflect or even suggest an agreement with SOIC to determine their respective rights and obligations at a later proceeding sufficient to establish a legal relationship between them.

ZAIC also argues that it has a legal relationship with SOIC because its claims for contribution and equitable subrogation provide the Court with an independent basis on which to hold SOIC liable. <u>See</u> ZAIC Supplemental Brief at 8-9. However, in <u>Provident Life & Accident Ins. Co.</u>, the court found that no legal relationship existed between the two insurers, in part, because "there [wa]s no basis on which to rule either party liable to the other." 850 F.2d at 1491. Here, ZAIC cites no authority for the proposition that its contribution and equitable subrogation claims provide the Court with authority to address its independent claim for declaratory judgment. <u>See</u> ZAIC Supplemental Brief at 8-9.

Not only is ZAIC's declaratory judgment claim deficient because ZAIC does not have a legal relationship with SOIC, but also because ZAIC fails to assert a live controversy. "Injury in the past ... does not support a finding of an Article III case or controversy when the only relief sought is declaratory judgment." <u>Malowney v. Fed. Collection Deposit Grp.</u>,

193 F.3d 1342, 1346 (11th Cir. 1999) (citing City of L.A. v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed.2d 675 (1983)).  "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Malowney, 193 F.3d at 1346. That is:

> [b]ased on the facts alleged, there must be a substantial continuing controversy between two parties. "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.  Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."

Id. at 1347 (quotation omitted).  A declaration as to a past injury "'would [be] nothing more than a gratuitous comment without any force or effect.'" Id. at 1348 (quotation omitted).  In the insurance context, once an insurer tenders coverage, any future claims that insurer brings regarding another insurer's obligations pertain to a past injury.[7]  For example, in Interstate Fire & Cas. Co. v. Kluger, Peretz, Kaplan & Berlin, P.L., 855 F. Supp. 2d 1376, 1379 (S.D. Fla. 2012), after paying out its policy limits, an excess insurer sought a declaration that two other insurers should have tendered coverage.  The Court held that it lacked jurisdiction over the declaratory judgment claim because the plaintiff sought to redress a past injury, which "does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment."[8] Id. (citing Nat'l Union Fire Ins. Co.

---

[7]      In the same way, after an insurer has provided a defense and that action is complete, a declaration of rights as to a mutual insurer's duty to defend pertains only to a past injury.

[8]      In Interstate Fire & Cas. Co., the plaintiff also asserted a claim for indemnification or contribution against the primary insurer, 855 F. Supp. 2d at 1379, just as ZAIC does here.  However, the court still found that it lacked jurisdiction to redress a past injury by issuing a declaratory judgment. Id.

of Pittsburgh, Pa v. Int'l Wire Grp., No. 02 Civ. 10338(SAS), 2003 WL 21277114, at *5 (S.D.N.Y. Jun. 2, 2003) (dismissing an excess insurer's claim for declaratory judgment against a primary insurer because it did "not seek a prospective determination of its rights and responsibilities under the insurance contract (so that it can avoid future damages), but rather a finding that it is not liable for damages alleged to have already accrued.'")). Inasmuch as ZAIC previously provided a defense and settled the Underlying Action on behalf of Catamount, see ZAIC Supplemental Brief at 2, Count I of the Second Amended Complaint no longer seeks a declaration of rights to address a potential future injury for purposes of the Declaratory Judgment Act.

The Court is not persuaded by the various cases ZAIC cites to suggest that the facts of this case present an actual case or controversy appropriate for judicial resolution.  In order to support its argument that "direct declaratory actions between multiple insurers" are proper, ZAIC relies on: Nova Cas. Co. v. OneBeacon Am. Ins. Co., 603 F. App'x 898, 899 (11th Cir. 2015) (reviewing the equitable subrogation claim, but noting that the district court had found a primary insurer obligated to defend and indemnify an insured); Auto-Owners Ins. Co. v. Great Am. Ins. Co., 479 F. App'x 228, 231 (11th Cir. 2012) (reviewing the denial of a motion to remand a claim brought under section 86.011 of the Florida Statutes); and Westfield Ins. Co. v. Carolina Cas. Ins. Co., 3:15-CV-748-J-39JRK, 2016 WL 7666146, at *1 (M.D. Fla. Jul. 25, 2016) (denying a declaratory judgment claim between two insurers).[9] See ZAIC Supplemental Brief at 5 n.7.  As an initial matter, the Court notes that none of

---

[9]     ZAIC also cites Atl. Marine Fla., LLC v. Evanston Ins. Co., 775 F.3d 1268, 1270 (11th Cir. 2014). However, this case is inapposite because the insured brought the lawsuit. Id. at 1270-71.

this authority predates Provident Life & Accident Ins. Co.,[10] and none constitutes binding precedent to the extent that it implicitly or explicitly conflicts with Provident Life & Accident Ins. Co.. See Futrell, 209 F.3d at 1289.  Further, even if they did conflict with Provident Life & Accident Ins. Co., they are all unpublished opinions, and although persuasive, such opinions are not binding.  See Futrell, 209 F.3d at 1289.

Moreover, although these cases do involve claims for declaratory relief between insurers, none address Article III case or controversy jurisdiction or Provident Life & Accident Ins. Co. v. Transamerica-Occidental Life Ins. Co., 850 F.2d 1489 (11th Cir. 1988).  In the Eleventh Circuit, "when it comes to questions of jurisdiction, [courts] are bound only by explicit holdings."  In re Bradford, 830 F.3d 1273, 1278 (11th Cir. 2016).  A decision that resolves an issue "without expressly considering whether it had jurisdiction … conveys, at most, an implicit inference that the [court] did not question its jurisdiction.   Such inferences or assumptions do not, however, bind [the court]."  Id. (citing Fed. Election Comm'n v. NRA Political Victory Fund, 513 U.S. 88, 97, 115 S. Ct. 537, 542, 130 L. Ed.2d 439 (1994) ("The jurisdiction of this Court was challenged in none of these [previous] actions, and therefore the question is an open one before us."); Will v. Mich. Dep't of State Police, 491 U.S. 58, 63 n.4, 109 S. Ct. 2304, 2308 n.4, 105 L. Ed.2d 45 (1989) ("[T]his Court has never considered itself bound [by prior implicit jurisdictional holdings] when a subsequent case finally brings the jurisdictional issue before us."); Hagans v. Lavine, 415 U.S. 528, 533 n.5, 94 S. Ct. 1372, 1377 n.5, 39 L. Ed.2d 577 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound

---

[10]   In the face of conflicting precedents, courts in the Eleventh Circuit are to follow the oldest precedent. United States v. Madden, 733 F.3d 1314, 1319 (11th Cir. 2013) ("When we have conflicting case law, we follow our oldest precedent.").

when a subsequent case finally brings the jurisdictional issue before us."); United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38, 73 S. Ct. 67, 69, 97 L. Ed. 54 (1952) ("Even as to our own judicial power or jurisdiction, this Court has followed the lead of Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio."); United States ex rel. Arant v. Lane, 245 U.S. 166, 170, 38 S. Ct. 94, 96, 62 L. Ed. 223 (1917) ("[A]s no [jurisdictional] question was raised in either [prior case] ..., the mere fact that the cases were entertained affords no ground for holding them as authoritative on the [jurisdictional] question before us."); King v. Cessna Aircraft Co., 505 F.3d 1160, 1168 (11th Cir. 2007) ("[O]ur [prior] opinion did not recognize any jurisdictional issue, much less explain why we had jurisdiction to decide the appeal. The implication of our [prior] decision—that we have jurisdiction in this situation—does not bind us, because the prior precedent rule does not extend to implicit jurisdictional holdings.  We are free to decide the issue here, just as though there were no [prior] decision....") (citations omitted); Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228, 1231 (11th Cir. 2007) ("[I]t is well-established circuit law that we are not bound by a prior decision's sub silentio treatment of a jurisdictional question. There is, in other words, an exception to the prior panel precedent rule for implicit jurisdictional holdings. If jurisdictional holdings are explicit they must be followed, not so if they are only implicit.") ([internal] citations omitted)).  Therefore, because none of the cases ZAIC relies on explicitly hold that the court had Article III case or controversy jurisdiction, the Court is not bound by any inference regarding jurisdiction ZAIC may draw from the court's ultimate resolution of the merits of the cases.

Upon consideration of the foregoing, ZAIC has failed to carry its burden of establishing that Count I of the Second Amended Complaint presents an actual case or controversy appropriate for judicial resolution.  Because the Court lacks the authority to resolve ZAIC's claim of declaratory judgment, Count I of the Second Amended Complaint is due to be dismissed.  Accordingly, the Court need not address SOIC's remaining arguments regarding the merits of Count I of the Second Amended Complaint.

### B. Equitable Subrogation

In Count II of the Second Amended Complaint, ZAIC asserts an equitable subrogation claim "for full recovery of the sums it paid for all defense fees and costs and indemnity payments in connection with the defense of Catamount and its principals in the Underlying Action."  See Second Amended Complaint ¶ 32.  As an initial matter, the Court notes that although ZAIC seeks to recover all of its "defense costs and indemnity payments made in defense and resolution of all claims brought against Catamount in the Underlying Action," see Second Amended Complaint ¶ 37, under the doctrine of equitable subrogation, an insurer can only recover the amount it paid on behalf of a judgment rendered against its insured, and cannot recover its attorney's fees and costs.  See Amerisure Mut. Ins. Co. v. Crum & Forster Specialty Ins. Co., No. 2:12-cv-443-FtM-29CM, 2014 WL 3809113, **3-4 (M.D. Fla. Aug. 1, 2014) (dismissing an insurer's equitable contribution claim through which it sought to recover defense costs); Am. Cas. Co. of Reading Pa. v. Health Care Indem., 613 F. Supp. 2d 1310, 1322-23 (M.D. Fla. 2009) (denying an insurer's request for contribution and subrogation for fees and costs); Pa. Lumbermens Mut. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co., 43 So. 3d 182, 186-87 (Fla. 4th DCA 2010) (collecting Florida cases showing that "'traditional principles of subrogation will not support a reimbursement

of defense costs in favor of someone who has the independent contractual duty to pay all such expenses,'" such as an insurer) (citation omitted).  Accordingly, to the extent ZAIC asserts a claim of equitable subrogation for the recovery of attorney's fees and costs incurred in the defense of Catamount, its claim in Count II is due to be dismissed.

Next, the Court considers ZAIC's claim of subrogation for recovery of indemnity payments made on behalf of Catamount and its principals.  Under Florida law, "subrogation is a cause of action in equity which is designed to afford relief to one who is required to pay a legal obligation of another."  Phoenix Ins. Co. v. Fla. Farm Bureau Mut. Ins. Co., 558 So. 2d 1048, 1050 (Fla. 2d DCA 1990).  "Florida recognizes two types of subrogation: conventional subrogation and equitable or legal subrogation."  Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999).  Conventional subrogation "arises or flows from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor."  Id. (citing Boley v. Daniel, 72 So. 644, 645 (Fla. 1916)).  Distinctly, legal or equitable subrogation—the doctrine at issue in this action—arises from "the legal consequences of the acts and relationships of the parties."  State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So. 3d 1099, 1100 (Fla. 2d DCA 2009) (citing Dade Cnty. Sch. Bd., 731 So. 2d at 646); see also W. Am. Ins. Co. v. Yellow Cab Co. of Orlando, 495 So. 2d 204, 207 (Fla. 5th DCA 1986).  Equitable subrogation "is based on the policy that no person should benefit by another's loss, and it 'may be invoked wherever justice demands its application, irrespective of technical legal rules.'"  Johnson, 18 So. 3d at 1100 (quoting W. Am. Ins. Co., 495 So. 2d at 207).

In practice, subrogation entails "the substitution of one person in the place of another with reference to a lawful claim or right."  W. Am. Ins. Co., 495 So. 2d at 206 (quoting Boley,

72 So. at 645).  In the insurance context, the insurer is "put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer." Monte De Oca v. State Farm Fire & Cas. Co., 897 So. 2d 471, 472 n.2 (Fla. 3d DCA 2004) (quotation and citation omitted).  More specifically, "in a dispute between a primary and excess insurer arising from the payment of a claim by the excess insurer," Phoenix Ins. Co., 558 So. 2d at 1050, "[t]hrough equitable subrogation, 'the excess insurer 'stands in the shoes' of the insured and succeeds to the rights and responsibilities that the insured would normally have against the primary insurer.'" Mount Vernon Fire Ins. Co. v. Transcontinental Ins. Co., No. 8:07-cv-1593-T-24-EAJ, 2008 WL 2074427, at *2 (M.D. Fla. May 15, 2008) (citations omitted); see also Galen Health Care, Inc. v. Am. Cas. Co. of Reading, 913 F. Supp. 1525, 1531 (M.D. Fla. 1996) ("Florida law recognizes a cause of action for equitable subrogation between primary and excess insurers arising from the payment of a claim by the excess insurers."); U.S. Fire Ins. Co. v. Morrison Assurance Co., 600 So. 2d 1147, 1151 (Fla. 1st DCA 1992) (noting "that the primary insurer should be held responsible to the excess insurer for improper failure to settle, since the position of the latter is analogous to that of the insured when only one insurer is involved.").

"Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." Dade Cnty.

Sch. Bd., 731 So. 2d at 646.[11]  SOIC argues that ZAIC does not adequately plead a prima facie equitable subrogation claim because it fails to plead all of the requisite elements.  See Motion at 22.  In Response, ZAIC challenges whether it must plead these elements by contesting the applicability of SOIC's sole authority, Dade Cnty. Sch. Bd..  See Response at 14-15.  ZAIC argues that Dade Cnty. Sch. Bd. is limited to tort claims, and that it does not establish a pleading requirement because it addressed an equitable subrogation claim "'raised for the first time at a post-verdict hearing on a motion for entry of final judgment.'" Id. at 14 (quoting Dade Cnty. Sch. Bd., 731 So. 2d at 644.).  The Court finds ZAIC's argument unavailing and notes that several courts have required a plaintiff to allege facts sufficient to give rise to these elements as a pleading requirement.  See Amerisure Ins. Co. v. S. Waterproofing, No. 3:14-cv-154-J-34JRK, 2014 WL 4682898, at *4 (M.D. Fla. Sept. 19, 2014) ("A plaintiff must allege [the enumerated] five elements in order to maintain a claim for equitable subrogation."); Columbia Bank v. Turbeville, 143 So. 3d 964, 968 (Fla. 1st DCA 2014) (resolving a motion to dismiss by applying these elements).  Additionally, courts have applied these elements to cases arising outside the realm of tort cases and specifically in the insurance context.  See KPMG Peat Marwick, 742 So. 2d at 332; DaimlerChrysler Ins. Co. v. Arrigo Enters., Inc., 63 So. 3d 68, 72 (Fla. 4th DCA 2011); Phoenix Ins. Co., 558 So. 2d at 1050; Johnson, 18 So. 3d at 1100; Morrison Assurance Co., 600 So. 2d at 1151.  Therefore, the Court finds that ZAIC must plead facts regarding these five elements in order to bring an equitable subrogation claim in this action.

---

[11]    Additionally, "[i]n order to state a cause of action, the subrogation claimant must affirmatively establish superior equities in himself over the one against whom subrogation is sought to be enforced." Dixie Nat'l Bank of Dade Cnty. v. Emp'rs Commercial Union Ins. Co. of Am., 463 So. 2d 1147, 1151 (Fla. 1985) (quotation omitted); see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So. 2d 328, 332 (Fla. 3d DCA 1999).  SOIC has not challenged whether ZAIC has alleged that equity weighs in its favor.

Next, ZAIC addresses SOIC's specific contentions regarding its alleged pleading deficiencies.  First, SOIC argues that ZAIC "fail[s] to plead that (1) the subrogation Z[AIC] seeks would not work any injustice to the rights of a third party."  See Motion at 22.  In Response, ZAIC acknowledges that it "does not expressly discuss the impact on the rights of any third-party" because "no such third party exists who could be adversely impacted by ZAIC's equitable subrogation claim," and notes that "SOIC does not argue otherwise in [the] [M]otion."  See Response at 15.  Here, despite the absence of an explicit allegation that subrogation would not work an injustice to the rights of any third party, the Court can reasonably infer from ZAIC's well pled allegations that no third party would be injured by allowing ZAIC to proceed with its equitable subrogation claim.  The Court's duty to draw all reasonable inferences in favor of the plaintiff on a motion to dismiss, see Omar, 334 F.3d at 1247, is particularly important in light of the Supreme Court of Florida's substantive "commitment to a liberal application of the rule of equitable subrogation."  Dantzler Lumber & Export Co. v. Columbia Cas. Co., 115 Fla. 541, 551 (Fla. 1934).  In determining whether or not to allow an equitable subrogation claim to proceed, the Supreme Court of Florida has emphasized that equitable concerns outweigh "technical rules of law."  Id. at 550-51.  According to the court:

> [t]he doctrine of subrogation will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand.  It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the technical rules of law … The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice.

Id. (emphasis supplied).  Indeed, because the purpose of equitable subrogation "is 'to do complete and perfect justice between the parties without regard to form or technicality, the

remedy will be applied in all cases where demanded by the dictates of equity, good conscience, and public policy.'" Compania Anonima Venezolana De Navegacion v. A. J. Perez Export Co., 303 F.2d 692, 697 (5th Cir. 1962) (emphasis supplied).

Here, the Court finds that the interests of justice require allowing ZAIC to proceed with the indemnity payment portion of its equitable subrogation claim.  ZAIC claims that it made "indemnity payments … on behalf of Catamount that were properly the responsibility and obligation of SOIC," see Second Amended Complaint ¶ 33, and seeks to recover those payments via its equitable subrogation claim.  The Second Amended Complaint does not in any way suggest that any third party is at risk of suffering a potential injustice if the Court were to grant ZAIC's requested relief, and there is no dispute that no such third party exists. See DaimlerChrysler Ins. Co., 63 So. 3d at 70, 72 (finding that a plaintiff "could properly have maintained an equitable subrogation claim" because "[i]t [wa]s undisputed that … there was no injustice to a third party," even though it affirmed the claim's dismissal on other grounds).   Notably, "a formulaic recitation of the elements" of an equitable subrogation cause of action would have been insufficient.  See Twombly, 550 U.S. at 555; Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). Rather, the Court looks to ZAIC's well pleaded allegations of fact and based on those allegations, the Court may reasonably infer that allowing ZAIC to bring an equitable subrogation claim will not work an injustice to any third party.

Additionally, SOIC contends that ZAIC has failed to state a claim for equitable subrogation because it fails to plead that "Z[AIC] made payments to protect Z[AIC]'s own interest," and that "Z[AIC] paid off the entire debt owed."  See Motion at 22.  Once again,

the Court finds that the Second Amended Complaint may lack conclusory allegations containing the buzz words of a <u>prima facie</u> equitable subrogation claim.  However, drawing all inferences in favor of ZAIC as it must, the Court can reasonably infer the presence of these elements from ZAIC's well pleaded allegations of fact.  First, the Court can infer that ZAIC made payments to protect its own interest from ZAIC's allegations that it only assumed Catamount's defense because SOIC refused to do so, and that it viewed any payments made on Catamount's behalf as an advance.  Specifically, ZAIC alleges that it assumed Catamount's defense in the Underlying Action because it "was not aware at that time that Catamount was a primary insured under the SOIC Policy, or that SOIC owed Catamount a duty to defend and indemnify as the primary insurer," <u>see</u> Second Amended Complaint ¶ 15, and that it resolved the Underlying Action on behalf of Catamount only "[a]fter SOIC refused to protect and defend its insured," <u>id.</u> at ¶ 36.  Additionally, ZAIC characterized its payments as "an advance," <u>see</u> First Request, and put SOIC on notice of its belief that ZAIC's coverage applied only on an excess basis, <u>see</u> Second Request.  Based on these allegations, the Court can reasonably infer that ZAIC made payments on behalf of Catamount to protect its own interests.  Further, the Court can reasonably infer that ZAIC paid off Catamount's entire debt from ZAIC's allegation that it "resolved the Underlying Action on behalf of Catamount" for a confidential amount in excess of its $75,000.00 limit." <u>Id.</u> at ¶ 19.  Based on these reasonable inferences drawn in ZAIC's favor and the dictates of "equity, good conscience, and public policy," <u>see</u> <u>Compania</u>, 303 F.2d at 697, ZAIC has sufficiently pled a claim of equitable subrogation as to the indemnity payments that is plausible on its face.  As such, to the extent that SOIC seeks to dismiss ZAIC's claim of equitable subrogation with respect to the indemnity payment made on

behalf of Catamount and its principals as set forth in Count II of the Second Amended Complaint, the Motion is due to be denied.

### C. Common Law Contribution

SOIC also seeks to dismiss Count III of the Second Amended Complaint for contribution on the ground that "'contribution is exclusively a statutory remedy'" under section 768.31 of the Florida Statutes, see Motion at 22-23 (citations omitted), that is only available "when two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death …." Fla. Stat. § 768.31(2)(a); see also State Nat'l Ins. Co. v. White, No. 8:10-cv-894-T-27TBM, 2011 WL 5854427, at *3 (M.D. Fla. Nov. 17, 2011) ("contribution is the proper legal theory if [the parties] were joint tortfeasors, while subrogation is the proper legal theory if [they] were not joint tortfeasors."); Jones v. Jeld-Wen, Inc., No. 07-22328, 2008 WL 2699434, at *7 (S.D. Fla. Jun. 30, 2008) (noting that contribution "is not available for contract-based action[s]."); Iowa Mut. Ins. Co. v. Lopez, 444 So. 2d 1021, 1021 (Fla. 3d DCA 1984) (affirming the dismissal of a contribution claim premised on a contract dispute).  SOIC seems to contend that because ZAIC has not alleged that ZAIC and SOIC are joint tortfeasors, contribution is not an available remedy.  Id.  Although under section 768.31 "[c]ontribution is only available to joint tortfeasors," see Dade Cnty. Sch. Bd., 731 So. 2d at 641 n.2, SOIC's argument is inapposite because ZAIC does not seek contribution under this statute, and in fact, acknowledges that it "could not have brought its contribution claim pursuant to Fla. Stat. 768.31."  See Response at 17.

Instead, ZAIC seeks to bring a cause of action for equitable contribution.  SOIC argues that ZAIC intends to bring a common law contribution claim, which is not recognized

under Florida law, based on the label ZAIC attaches to Count III in the Second Amended Complaint.  See Motion at 22.  However, in construing a claim, the "Court looks beyond the captions and labels in a complaint to the content and substance of the allegations."[12] Paramo v. IMICO Brickell, LLC, No. 08-20458-CIV, 2008 WL 4360609, at *7 (S.D. Fla. Sept. 24, 2008); see also Byrd v. City of Daphne, No. CA-11-0468-CG-C, 2012 WL 1036058, at *6 (S.D. Ala. Mar. 9, 2012) ("'the substance of the Plaintiff's claim is what matters, not how he labels it.'") (citation omitted).

ZAIC's allegations put SOIC on notice that ZAIC believes it is entitled to contribution from SOIC to the extent that ZAIC paid more than its pro rata share of Catamount's damages to resolve the Underlying Action.  See Second Amended Complaint ¶¶ 39-43. This is, quintessentially, a claim for equitable contribution, which is meant "to distribute equally among those who have a common obligation, the burden of performing that obligation." Schrank v. Pearlman, 683 So. 2d 559, 561 (Fla. 3d DCA 1996) (citing Fletcher v. Anderson, 616 So. 2d 1201, 1202 (Fla. 2d DCA 1993)).

> [C]ontribution … is based on a principle of justice and equity, that one person should not be singled out by the creator to pay the whole demand; and where this occurs, the law intervenes … and gives the party paying a remedy by action for contribution.  This right of action grows out of an implied agreement, that if one … shall be compelled to pay the whole, or a disproportionate part of the debt, the other shall pay such a sum as shall render their common burden equal.

Love v. Gibson, 2 Fla. 598, 618-19 (Fla. 1849); see also Meckler v. Weiss, 80 So. 2d 608, 609 (Fla. 1955) (recognizing contribution as the general rule between co-obligors); Desrosiers v. Russell, 660 So. 2d 396, 398 (Fla. 2d DCA 1995) ("When a person pays

---

[12]     Notably, even if the Court were to ascribe meaning to ZAIC's labels, it would find ZAIC's characterization of Count III of the Second Amended Complaint to be ambiguous, at best.  Although ZAIC describes Count III as a claim for "common law contribution" twice, see Second Amended Complaint ¶¶ 40, 43, ZAIC refers to it as a claim simply for "contribution" six times, id. at ¶¶ 4, 39 (twice), 41; pp. 10, 12.

more than his share of a common obligation, the law gives him the remedy of contribution to obtain from the other obligors payment of their respective shares of the obligation.").  It is distinct from an equitable subrogation claim in that:

> [t]h[e] right of equitable contribution belongs to each insurer individually.  It is not based on any right of subrogation to the rights of the insured, and is not equivalent to "standing in the shoes" of the insured. … Unlike subrogation, the right of equitable contribution exists independently of the rights of the insured.  It is predicated on the commonsense principle that[,] where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another indemnitor.

Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co., 955 F. Supp. 2d 317, 328-29 (D. N.J. 2013) (citations omitted).[13]  Because the substance of ZAIC's allegations convey ZAIC's objective to recover from SOIC the amount that its payment on behalf of Catamount exceeded its pro rata share, the Court finds that ZAIC intends to assert an equitable contribution cause of action.  Accordingly, SOIC's contention that ZAIC would need to amend its pleading in order to bring a claim for equitable contribution is inapposite.  See Reply at 3.

The Court further finds that ZAIC has sufficiently asserted a claim for equitable contribution.  In order for an insurer to bring this claim, courts in some states require a plaintiff to allege that the insurers "share (1) the same level of obligation (2) on the same risk (3) to the same insured."  U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., No. 6:06-cv-1180-Orl-31UAM, 2007 WL 3275307, *3 (M.D. Fla. Oct. 31, 2007) (citing Lexington Ins.

---

[13]    Although Liberty Int'l Underwriters Can. applies New Jersey law, for purposes of distinguishing an equitable contribution claim from an equitable subrogation claim, New Jersey law is not substantively different from Florida law.

Co. v. Allianz Ins. Co., 177 F. App'x 572, 573 (9th Cir. 2006)); see also Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co. of Ks., 158 F. Supp. 3d 1183, 1201-02 (D. N.M. 2015) (applying the three elements); Flintkote Co. v. Gen. Accident Assurance Co. of Can., 480 F. Supp. 2d 1167, 1181 (N.D. Cal. 2007) (recognizing the three elements).  However, Florida courts do not require a plaintiff "to explicitly demonstrate the existence of these three elements to pursue its contribution claim."  U.S. Fid. & Guar. Co., 2007 WL 3275307 at *3.  Rather, "Florida courts have used much more general language, holding that equitable contribution is available where the parties share a 'common burden,' or 'common liability.'"  Id. (citation omitted).

> In order to find that two insurers share a common obligation:
>
>> It is not necessary that the policies provide identical coverage in all respects in order for … each insurer [to be] entitled to contribution from the other; as long as the particular risk actually involved in the case is covered by both policies, the coverage is duplicate, and contribution will be allowed.

15 Couch on Ins. § 218:6 (Dec. 2016).  For example, in U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., the court allowed Liberty Surplus Insurance Corporation (Liberty) to proceed with its equitable contribution claim against St. Paul Fire & Marine Insurance Company (St. Paul) in a situation much like the instant action.  2007 WL 3275307 at **3-4. There, Liberty "issued two commercial general liability policies … to John T. Callahan & Sons, Inc. ('Callahan'), which served as the general contractor for" a construction project. Id. at *1.  St. Paul issued commercial liability policies to one of Callahan's subcontractors, and covered Callahan as an additional insured for damages arising out of that subcontractor's work.  Id. at **1, 3-4.  The court found that because "both the St. Paul Policies and the Liberty Policies provide[d] coverage to Callahan for liability arising out of the work of [the subcontractor]," the insurers "share[d] a common obligation, and Liberty's

contingent equitable contribution claim [wa]s legally proper." <u>Id.</u> at *4.  The court distinguished this scenario from cases in which a primary insurer brought a contribution claim against an excess insurer, <u>see</u> <u>Transcontinental Ins. Co. v. Ins. Co. of the State of Pa.</u>, 148 Cal. App. 4th 1296 (Cal. App. 2007), and in which a subcontractor's insurer brought a contribution claim against a different subcontractor's insurer, both of whom covered the general contractor as an additional insured, but only for damages arising out of their respective insured's work, <u>see</u> <u>Home Ins. Co. v. Cincinnati Ins. Co.</u>, 213 Ill. 2d 307 (Ill. 2004) and <u>Schal Bovis, Inc. v. Cas. Ins. Co.</u>, 315 Ill. App. 3d 353 (Ill. App. 2000).

Here, as in <u>U.S. Fid. & Guar. Co.</u>, SOIC issued a commercial general liability policy to Catamount.  <u>See</u> SOIC Policy.  ZAIC issued a commercial general liability policy to Duval, Catamount's Subcontractor, and covered Catamount as an additional insured for damages arising out of Duval's work.  <u>See</u> ZAIC Policy; Endorsement.  Thus, ZAIC alleges that SOIC had a duty to provide primary coverage to Catamount for all damages arising out of Duval's work, and ZAIC had a duty to provide excess coverage to Catamount for these damages.  <u>See</u> Second Amended Complaint ¶¶ 15, 23-24.  Accordingly, "it appears that both the [SOIC] and [ZAIC] Policies [may] provide coverage to [Catamount] for liability arising out of the work of Duval."  <u>U.S. Fid. & Guar. Co.</u>, 2007 WL 3275307 at * 4.  To this extent, ZAIC's allegations suggest a common obligation sufficient to permit ZAIC's contingent equitable contribution claim to proceed.  Therefore, to the extent that SOIC seeks to dismiss Count III of the Second Amended Complaint, its Motion is due to be denied.

### D.  Request for a Stay

In SOIC's Supplemental Brief, SOIC seeks to stay the Court's consideration of Counts II and III of the Second Amended Complaint.  <u>See</u> SOIC Supplemental Brief at 5. This request is due to be denied.  Preliminarily, the Court notes that a request for affirmative relief is not properly made when simply included in a response to a motion, or in this case, a supplemental brief requested by the Court.  <u>See</u> Rule 7(b).  Additionally, even if SOIC were proper to include this request in its Supplemental Brief, the request is otherwise due to be denied for failure to comply with Local Rules 3.01(a) and 3.01(g), United States District Court, Middle District of Florida (Local Rule(s)).  Local Rule 3.01(a) requires a memorandum of legal authority in support of a request from the Court.  <u>See</u> Local Rule 3.01(a).  Local Rule 3.01(g) requires certification that the moving party has conferred with opposing counsel in a good faith effort to resolve the issue raised by the motion and advising the Court whether opposing counsel agrees to the relief requested.  <u>See</u> Local Rule 3.01(g).  Thus, the Court will not entertain SOIC's request for relief included in the SOIC Supplemental Brief.  SOIC is advised that, if it wishes to pursue such relief, it is required to file an appropriate motion, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

## IV.    Motion for Summary Judgment

Also pending before the Court is Plaintiff, Zurich American Insurance Company's Renewed Motion for Partial Summary Judgment (Doc. 44; Motion for Summary Judgment), filed on August 18, 2016.  Defendant filed a response on September 1, 2016.  <u>See</u> Defendant, Southern-Owners Insurance Company's Response in Opposition to Plaintiff, Zurich American Insurance Company's Renewed Motion for Partial Summary Judgment

(Doc. 50).   Plaintiff filed a reply on October 18, 2016.  <u>See</u> Zurich American Insurance Company's Reply to Southern-Owners Insurance Company's Response to Zurich's Renewed Motion for Partial Summary Judgment (Doc. 55).  In the Motion for Summary Judgment, ZAIC seeks entry of summary judgment regarding "SOIC's duty to have provided a defense" to Catamount.  <u>See</u> Motion for Summary Judgment at 1.  To the extent SOIC seeks a declaration of rights as to ZAIC's duty to defend asserted in Count I of the Second Amended Complaint, the Motion for Summary Judgment is due to be denied as moot because the Court has determined that Count I is due to be dismissed for lack of subject matter jurisdiction.  Additionally, to the extent that SOIC seeks summary judgment on the portion of Count II of the Second Amendment Complaint, which asserts a claim of equitable subrogation based on SOIC's duty to defend, the Motion for Summary Judgment also is due to be denied as moot.  This is so because, as previously noted, to the extent that ZAIC seeks to pursue a claim of equitable subrogation for attorney's fees and costs incurred in defending Catamount, <u>see</u> Second Amended Complaint ¶ 37, Count II fails to state a claim and is due to be dismissed.  <u>See</u> <u>supra</u> at 23-24; <u>Amerisure Mut. Ins. Co.</u>, 2014 WL 3809113, **3-4 (dismissing an insurer's equitable contribution claim through which it sought to recover defense costs); <u>Am. Cas. Co. of Reading Pa.</u>, 613 F. Supp. 2d at 1322-23 (denying an insurer's request for contribution and subrogation for fees and costs); <u>Pa. Lumbermens Mut. Ins. Co.</u>, 43 So. 3d at 186-87 (collecting Florida cases showing that "'traditional principles of subrogation will not support a reimbursement of defense costs in favor of someone who has the independent contractual duty to pay all such expenses,'" such as an insurer) (citation omitted).  Accordingly, the Motion for

Summary Judgment which relates only to SOIC's duty to defend is due to be denied as moot.

**V.     Conclusion**

Accordingly, it is **ORDERED**:

1.      Defendant, Southern-Owners Insurance Company's Motion to Dismiss Zurich American Insurance Company's Second Amended Complaint for Failure to State a Cause of Action (Doc. 49) is **GRANTED**, in part, and **DENIED**, in part.

a.      The Motion is **GRANTED** to the extent that Count I of the Second Amended Complaint is **DISMISSED without prejudice**.

b.      The Motion is further **GRANTED** to the extent that ZAIC's claim in Count II of the Second Amended Complaint for equitable subrogation for attorney's fees and costs incurred in defending Catamount is **DISMISSED**.

c.      The Motion is **DENIED** to the extent that ZAIC seeks to dismiss the remaining claims in Count II and Count III of the Second Amended Complaint.

2.      To the extent that SOIC seeks a stay of the Court's consideration of the claims in Count II and Count III of the Second Amended Complaint, Defendant Southern-Owners Insurance Company's Supplemental Brief Per January 30, 2017 Court Order (Doc. 64) is **DENIED without prejudice**.

3.      Plaintiff, Zurich American Insurance Company's Renewed Motion for Partial Summary Judgment (Doc. 44) is **DENIED AS MOOT**.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of March, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc25
Copies to:
Counsel of Record