**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ZURICH AMERICAN INSURANCE
COMPANY,

        Plaintiff,

                                   Case No.  3:15-cv-1041-J-34PDB

vs.

SOUTHERN-OWNERS INSURANCE
COMPANY,

        Defendant.

_____/

## O R D E R

**THIS CAUSE** is before the Court on (1) Plaintiff, Zurich American Insurance Company's Motion for Final Summary Judgment (Doc. 88; ZAIC's Motion), filed on October 6, 2017; and (2) Defendant, Southern-Owners Insurance Company's Motion for Final Summary Judgment (Doc. 94; SOIC's Motion), filed on November 20, 2017.  On October 20, 2017, Defendant Southern-Owners Insurance Company ("SOIC") filed Defendant Southern-Owners Insurance Company's Response in Opposition to Zurich American Insurance Company's Motion for Final Summary Judgment (Doc. 91; SOIC's Response), and on December 1, 2017, Plaintiff Zurich American Insurance Company ("ZAIC") filed Zurich American Insurance Company's Response to Southern Owners Insurance Company's Motion for Final Summary Judgment (Doc. 98; ZAIC's Response).  With leave of Court, see Order (Doc. 96), ZAIC filed Zurich American Insurance Company's Reply to Southern Owners Insurance Company's Response to Zurich's Motion for Final Summary

Judgment (Doc. 97; ZAIC's Reply) on November 28, 2017.  Accordingly, these motions are ripe for review.

## I.   Background and Undisputed Facts

This dispute between two insurers arises from an underlying premises liability action, Case No. 2012-CA-13359 ("Underlying Action"), filed by Charles McMillan ("McMillan") in the Circuit Court, Fourth Judicial Circuit, In and For Duval County, Florida. In the Underlying Action, McMillan asserted a negligence claim against Catamount Constructors, Inc. ("Catamount").   See generally Amended Complaint (Doc. 91-1; Underlying Amended Complaint).   ZAIC undertook Catamount's defense and settled McMillan's claims against Catamount.   See Plaintiff, Zurich American Insurance Company's Third Amended Complaint (Doc. 77; Third Amended Complaint) ¶¶18, 22; see generally ZAIC's Response to SOIC Second Request for Production (Docs. 88-9, 88-10, 88-11 and 88-12; collectively, Bill Analysis Report).   In the instant action, ZAIC brings a claim for equitable subrogation to recover its defense costs and indemnity payment made on behalf of Catamount, or in the alternative, a claim for equitable contribution as to ZAIC's indemnity payment, based on the following undisputed facts.   See generally Third Amended Complaint ¶24.

### A.  The Subcontract Between Catamount and Duval

Catamount served as the general contractor for a construction project in which it contracted to furnish and install a complete gravel/sand sub-base package (the "Project") at the Dr. Pepper West Point Trade Center, a distribution warehouse located at 2300 Pickettville Road, Jacksonville, Florida 32220 (the "Site").   See Subcontract Agreement Between Catamount and Duval (Doc. 88-1; Subcontract) at 2 ¶1.   On April 12, 2012,

Catamount and Duval Concrete Contracting ("Duval") executed the Subcontract, whereby Duval agreed to "furnish[ ] all labor, materials, tools, equipment and insurance necessary to" complete the Project.  Id.  Additionally, Duval agreed to "indemnify and hold Contractor [Catamount] harmless from all claims, losses, fines, penalties, assessments of damages arising out of Subcontractor's [Duval's] work or from Subcontractor's breach of any term hereof." Id. at 5 ¶19.  Further, Duval agreed to maintain liability insurance which named Catamount as an additional insured, and would provide primary coverage to Catamount for any "liability arising out of" Duval's work.  Id. at 4 ¶11, Attachment C.

### B. Duval's Policy with SOIC

In accordance with the terms of the Subcontract, Duval purchased, and on April 19, 2011, SOIC issued a commercial general liability policy effective from June 15, 2011, through June 15, 2012.  See Southern-Owners Insurance Company's Certified General Liability Insurance Policy No. 072322-78005160-11 (Doc. 88-2; SOIC Policy).  According to the Blanket Additional Insured Endorsement (SOIC Policy at 42; the "Endorsement"), "[a] person or organization is an Additional Insured, only with respect to liability arising out of 'your work' for that Additional Insured by or for you [Duval]… If required in a written contract or agreement." See Endorsement (emphasis added).  Further, the SOIC Policy "is primary for the Additional Insured, but only with respect to liability arising out of 'your work' for that Additional Insured by or for you.  Other insurance available to the Additional Insured will apply as excess insurance and not contribute as primary insurance to the insurance provided by this endorsement." Id. (emphasis added).  The SOIC Policy defines "your work" as "(1) [w]ork or operations performed by you or on your behalf; and (2)

[m]aterials, parts or equipment furnished in connection with such work or operations." <u>See</u> SOIC Policy at 41 ¶27.

### C. Catamount's Policy with ZAIC

ZAIC issued a commercial insurance policy to Catamount, effective from March 1, 2012 through March 1, 2013. <u>See</u> Zurich American Insurance Company's Policy No. GLA 5490400-00 (Docs. 88-3 and 88-4; collectively, ZAIC Policy). The ZAIC Policy provided excess insurance "over [a]ny other primary insurance available to you [Catamount] covering liability for damages arising out of the premises or operation, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement." <u>Id.</u> (Doc. 88-3) at 58 ¶4(1)(b). Further, the ZAIC Policy provided that "[w]hen this insurance is excess, we will have no duty . . . to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.'" <u>Id.</u> at 58 ¶4(2).

### D. The Underlying Action and ZAIC's Defense of Catamount

McMillan initiated the Underlying Action on December 13, 2012. <u>See</u> Underlying Action Docket (Doc. 90-2). On May 6, 2013, the state court granted McMillan's motion to file an amended complaint to add Catamount as a defendant. <u>See</u> Underlying Action Docket; Underlying Amended Complaint. On April 15, 2014, with leave of court, Catamount filed a third-party complaint against Duval for indemnification, contribution, and negligence.[1] <u>See</u> Underlying Action Docket at 6. On January 6, 2015, McMillan, with Duval's consent, sought leave to file the Second Amended Complaint (Doc. 88-5;

---

[1]     "The negligence count alleged that, if any negligence caused Plaintiff's [McMillan's] fall, it was negligence caused by the subcontractor's [Duval]'s breach of contractual and common-law responsibilities." <u>See</u> State Court Order (Doc. 90-1) at 2 n.1.

Underlying Second Amended Complaint) to add Duval as a defendant. See Plaintiff's Motion for Leave to Amend Complaint (Doc. 91-2; McMillan's Motion to Amend). The Underlying Action Docket shows no order resolving McMillan's Motion to Amend. See generally Underlying Action Docket. Nevertheless, on February 10, 2015, Duval filed an answer to the Underlying Second Amended Complaint, and then, as reflected by the filings on the Underlying Action Docket, Duval and the other named defendants litigated the Underlying Action based upon the Underlying Second Amended Complaint until the parties reached a settlement. See id.

In the Underlying Second Amended Complaint, McMillan asserted negligence claims against Catamount and Duval based on the following allegations. See Underlying Second Amended Complaint ¶¶25-42. On May 30, 2012, McMillan visited the Site and "slipped and fell due an accumulation of debris as he walked across an outside parking lot area of the bottling plant towards a port-o-let[2] where Defendant Catamount had begun construction work and established a construction site," id. ¶28, and where "Duval had previously begun concrete cutting work and had established a construction site," id. ¶37. "The accumulation of debris on the outside walk ways was a defectively dangerous condition and/or the causes and/or origins thereof were created by and/or known to" Catamount and Duval, "or had existed for a sufficiently long period of time that said Defendant[s] in the exercise of reasonable care, should have known of said condition." Id. ¶¶30, 39. Catamount and Duval, each acting "for themselves or by and through their respective agents, employees or servants acting within the course and scope of their

---

2        A "port-o-let" is a portable toilet enclosure. See Hood v. Metro Indus. Corp., 806 So. 2d 848, 850 (La. App. 1 Cir. 2001).

respective employments and authority," breached their respective duties of care owed to McMillan by:

    a) failing to properly instruct their respective employees, agents, and/or servants as to the proper care and maintenance of the outer areas and walkways, and thereby knowingly permitting a dangerous condition(s) to remain on the premises to the peril of the Plaintiff, and/or

    b) failing to provide reasonable and adequate warnings of the actually or constructively known dangerous condition(s) and/or the potential for danger and injury to the Plaintiff, and/or

    c) failing to operate or maintain the premises in a reasonably safe condition for protection of the Plaintiff. [sic]

    d) failing to maintain the outer area of the Defendant's business was [sic] caused a debris/slip condition and failing to provide a safe, slip-free walkway surface.

Id. ¶¶31, 40.

ZAIC initially assumed Catamount's defense. See Letter dated April 15, 2014, from Tom Finch, Claim Specialist, with Zurich American Insurance Company to Duval Concrete Contracting (Doc. 77-6; First Tender) at 2. Having done so, ZAIC hired the law offices of Conroy Simberg to represent Catamount. See generally Bill Analysis Report.

On the same day that Catamount filed the third-party complaint against Duval, ZAIC, pursuant to the Subcontract, tendered the defense and indemnity of Catamount to Duval and requested that Duval notify its insurer. See First Tender at 2-3. Upon ZAIC's discovery that SOIC issued a commercial general liability policy to Duval, ZAIC made a second tender to Duval, and a first tender to SOIC, on June 22, 2015. See Letter dated June 22, 2015 from Michele Mecca, MCU Specialist with Zurich American Insurance Company to O'Hara Law Firm, Southern-Owners Insurance Company and All Lines Insurance Agency, Inc.

(Doc. 77-7; Second Tender).[3] SOIC denied the Second Tender on July 30, 2015. <u>See</u> Letter dated July 30, 2015 from Mark F. Shannahan, AIC, with Southern-Owners Insurance Company to Michele Mecca, with Zurich American Insurance Company (Doc. 77-8; SOIC Denial).

On November 9, 2015, ZAIC issued a check in the amount of $275,000 to settle McMillan's claims against Catamount. <u>See</u> Bill Analysis Report (Doc. 88-12) at 37. ZAIC incurred and expended $83,474.82 in attorney's fees and defense costs in defense of Catamount in the Underlying Action. <u>See generally</u> Bill Analysis Report.

On September 29, 2017 (Doc. 90-1; State Court Order), some two years after the settlement of McMillan's claims and the filing of this action, the Honorable Karen Cole granted summary judgment in favor of Duval on Catamount's third party claim for indemnification based on her determination that Duval was not obligated to indemnify Catamount for its liability to McMillan. <u>See generally</u> <u>id.</u> In reaching her conclusion, Judge Cole determined that "the only claim ever made by the Plaintiff [McMillan] against the Defendant general contractor Catamount was for direct liability arising out of negligent acts by Catamount rather than for vicarious liability arising out of negligent acts by Catamount's subcontractor, Duval Concrete." <u>Id.</u> at 4. Construing the indemnification provision of the Subcontract, Judge Cole concluded that Catamount was not entitled to indemnification for its own negligence. <u>Id.</u> Thus, Duval prevailed in the state court indemnification action.

---

[3]    Although ZAIC does not submit any evidence to support its allegation that it was unaware of the SOIC Policy until June 22, 2015, this fact is neither disputed nor material. <u>See</u> Third Amended Complaint ¶¶18-20; Defendant Southern-Owners Insurance Company's Answer and Affirmative Defenses to Zurich's Third Amended Complaint (Doc. 103; Answer) ¶¶19-21.

**E.  The Instant Action**

On August 21, 2015, ZAIC initiated this action to recover its attorney's fees, defense costs, and the settlement payment from SOIC.  See Plaintiff, Zurich American Insurance Company's Complaint for Declaratory Judgment (Doc. 1; Complaint); see also Bill Analysis Report.  Because ZAIC has amended its pleading several times,[4] the Third Amended Complaint, filed with leave of Court on June 1, 2017, see Order Granting Plaintiff's Unopposed Motion for Leave to Amend (Doc. 75), is the operative pleading.

In the Third Amended Complaint, ZAIC asserts two causes of action against SOIC: a claim in Count I for equitable subrogation in which it seeks reimbursement of the attorney's fees and costs incurred in the defense of Catamount in the Underlying Action, as well as indemnity or reimbursement for the sum paid in the settlement of McMillan's claim against Catamount, see Third Amended Complaint at 7-8; and in Count II, an alternative claim for contribution in which it seeks reimbursement of any amount paid in excess of Catamount's pro rata share of the insurers' common liability, see id. at 8-10.

On June 14, 2017, SOIC moved to dismiss the Third Amended Complaint for lack of subject matter jurisdiction.  See Defendant Southern-Owners Insurance Company's Motion to Dismiss Plaintiff's Third Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 79; Motion to Dismiss).  ZAIC filed a response on June 28, 2017.  See Plaintiff, Zurich American Insurance Company's, Response to Defendant, Southern-Owners Insurance Company's, Motion to Dismiss Zurich's Third Amended Complaint (Doc.

---

[4]     ZAIC filed its first amended complaint on September 14, 2015.  See Plaintiff, Zurich American Insurance Company's Amended Complaint for Declaratory Judgment (Doc. 5; Amended Complaint).  With leave of Court, see Clerk's Minutes (Doc. 43), ZAIC filed Plaintiff, Zurich American Insurance Company's, Second Amended Complaint (Doc. 42; Second Amended Complaint) on August 16, 2016.

80). Upon review, the Court determined that it had subject matter jurisdiction over the claims in the Third Amended Complaint and denied SOIC's Motion to Dismiss on February 26, 2018. <u>See</u> Order (Doc. 101; Order Denying Motion to Dismiss).[5]

Thereafter, the parties filed their respective cross-motions for summary judgment. <u>See generally</u> ZAIC's Motion and SOIC's Motion. In ZAIC's Motion, ZAIC purports to seek entry of final summary judgment in its favor on both its claim for equitable subrogation, and its claim for contribution. <u>See</u> ZAIC's Motion at 1-3. However, although mentioning its claim for contribution in passing, <u>see</u> ZAIC's Motion at 1-2, 9-10, 12, ZAIC's arguments in support of entry of summary judgment focus almost entirely on its claim in Count I for equitable subrogation. With regard to that claim, ZAIC's position is that McMillan's allegations in the Underlying Second Amended Complaint triggered SOIC's obligation to provide primary coverage to Catamount as an additional insured. <u>Id.</u> at 13-14; ZAIC's Response at 6-10. As such, pursuant to the other insurance clause in the ZAIC Policy, ZAIC was Catamount's excess insurer and SOIC was its primary insurer. <u>Id.</u> at 6-7, 13-14. Under a theory of equitable subrogation, ZAIC maintains that SOIC is obligated to reimburse ZAIC for all of the defense costs and attorney's fees expended on Catamount's behalf in the Underlying Action, as well as the settlement sum. <u>See</u> ZAIC's Motion at 14-21. Further, ZAIC contends that SOIC's failure to defend Catamount under a reservation of rights agreement precludes SOIC from challenging the amount of its defense costs or the settlement. <u>Id.</u>; ZAIC's Reply at 6-7. ZAIC also asserts that it is entitled to recover the

---

[5]    On March 13, 2018, ZAIC filed a motion for Rule 11 sanctions against SOIC on the grounds that the Motion to Dismiss was "objectively frivolous, made without a credible basis in law or fact, misstated key facts and was filed in bad faith with no other purpose than to delay the resolution of this matter and to needlessly increase ZAIC's litigation costs." <u>See</u> Plaintiff, Zurich American Insurance Company's Motion for Rule 11 Sanctions (Doc. 102; Motion for Sanctions). The Court does not address the Motion for Sanctions here.

attorney's fees it incurred in this litigation pursuant to Florida Statute section 627.428. Id. at 22-24.

SOIC views the matter very differently. Generally, SOIC disputes ZAIC's premise that Catamount was an additional insured under the SOIC Policy with respect to the claims raised in the Underlying Action. See SOIC's Response at 3; SOIC's Motion at 16-21. Specifically, SOIC disputes ZAIC's contention that the Underlying Second Amended Complaint is the operative pleading, and contends that the Court should determine its coverage obligations based on the Underlying Amended Complaint. See SOIC's Response at 2-3; SOIC's Motion at 4. Nevertheless, SOIC asserts that none of McMillan's pleadings in the Underlying Action triggered additional insured coverage for Catamount because McMillan did not sue Catamount based on a theory of vicarious liability for Duval's negligence. See SOIC's Motion at 16-21. SOIC contends that Judge Cole's finding in the State Court Order that McMillan sought to hold Catamount directly liable for its own negligence rather than vicariously liable for Duval's negligence is binding on the Court under the doctrine of collateral estoppel. See SOIC's Response at 6-13. In support of this argument, albeit in a separate motion, SOIC requests that the Court take judicial notice of the State Court Order and the Underlying Action Docket. See Defendant Southern-Owners Insurance Company's Motion Requesting the Court Take Judicial Notice of State Court Order and State Court Docket (Doc. 90; Motion for Judicial Notice). In response to this request, ZAIC contends that the Court may not take judicial notice of a state court's order to establish the facts and legal conclusions within the order, and regardless, collateral estoppel is inapplicable here because the issues before the state court and this Court are not identical. See generally Plaintiff, Zurich American Insurance Company's Opposition to

Defendant's Motion for Judicial Notice (Doc. 92; ZAIC's Opposition); <u>see also</u> ZAIC's Reply at 7-10.

Although arguing that no issues of fact prevent entry of judgment in its favor, SOIC also argues that issues of fact do preclude entry of judgment in favor of ZAIC. Specifically, SOIC contends that even if it owed Catamount a defense in the Underlying Action, ZAIC is not entitled to reimbursement for the full settlement payment because there are material issues of fact regarding how to apportion the settlement amount between the amount attributable to Duval's negligence and that attributable to Catamount's negligence. <u>See</u> SOIC's Response at 5-6. Further, SOIC argues that if the Court were to find that it owed Catamount a defense based on the Underlying Second Amended Complaint, it would not be obligated to reimburse ZAIC for the defense costs and attorney's fees incurred prior to ZAIC's Second Tender dated June 22, 2015. <u>See</u> <u>id.</u> at 4-5.

Notably, like ZAIC, although purporting to seek entry of final summary judgment on all claims in this action, SOIC does not specifically address ZAIC's alternative claim for contribution in SOIC's Motion. <u>See generally</u> SOIC Motion. Nor does SOIC address that claim in SOIC's Response. <u>See generally</u> SOIC Response.

## II.   Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials." Rule 56(c)(1)(A).[6]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

---

[6]     Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

Anderson, 477 U.S. at 248.  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## III.    Applicable Law[7]

In this action, ZAIC brings claims for equitable subrogation, or alternatively, contribution.  See generally Third Amended Complaint.  Under Florida law, "subrogation is a cause of action in equity which is designed to afford relief to one who is required to pay a legal obligation of another."  Phoenix Ins. Co. v. Fla. Farm Bureau Mut. Ins. Co., 558 So. 2d 1048, 1050 (Fla. 2d DCA 1990).  Equitable subrogation "is based on the policy that no person should benefit by another's loss, and it 'may be invoked wherever justice demands its application, irrespective of technical legal rules.'"  State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So. 3d 1099, 1100 (Fla. 2d DCA 2009) (quoting W. Am. Ins. Co. v. Yellow Cab Co. of Orlando, 495 So. 2d 204, 207 (Fla. 5th DCA 1986)).  In practice, subrogation entails "the substitution of one person in the place of another with reference to a lawful claim or right."  W. Am. Ins. Co., 495 So. 2d at 206 (quoting Boley v. Daniel, 72 So. 644, 645 (Fla. 1916)).  In the insurance context, the insurer is "put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer."  Monte De Oca v. State Farm Fire & Cas. Co., 897 So. 2d 471, 472 n.2 (Fla. 3d DCA 2004) (quotation and citation omitted).  More specifically, "in a dispute

---

[7]    This case is before the Court based on its diversity jurisdiction.  See Third Amended Complaint ¶¶1-3.  As such, the Court applies the substantive law of the forum state, Florida.  See Auto-Owners Ins. Co. v. E.N.D. Servs., Inc., 506 F. App'x 920, 923 n.2 (11th Cir. 2013).  The parties agree that Florida law applies. See generally ZAIC's Motion; SOIC's Response; SOIC's Motion; ZAIC's Response.

between a primary and excess insurer arising from the payment of a claim by the excess insurer," Phoenix Ins. Co., 558 So. 2d at 1050, "[t]hrough equitable subrogation, 'the excess insurer 'stands in the shoes' of the insured and succeeds to the rights and responsibilities that the insured would normally have against the primary insurer.'" Mount Vernon Fire Ins. Co. v. National Fire Ins. Co. of Hartford, No. 8:07-cv-1593-T-24-EAJ, 2008 WL 2074427, at *2 (M.D. Fla. May 15, 2008) (citations omitted); see also Galen Health Care, Inc. v. Am. Cas. Co. of Reading, 913 F. Supp. 1525, 1531 (M.D. Fla. 1996) ("Florida law recognizes a cause of action for equitable subrogation between primary and excess insurers arising from the payment of a claim by the excess insurers."); U.S. Fire Ins. Co. v. Morrison Assurance Co., 600 So. 2d 1147, 1151 (Fla. 1st DCA 1992) (noting "that the primary insurer should be held responsible to the excess insurer for improper failure to settle, since the position of the latter is analogous to that of the insured when only one insurer is involved.").

"Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999). Additionally, subrogation is appropriate where equity falls in the subrogee's favor. See Dixie Nat'l Bank of Dade Cnty. v. Emp'rs Commercial Union Ins. Co. of Am., 463 So. 2d 1147, 1151 (Fla. 1985) ("[T]he subrogation claimant must affirmatively establish superior equities in himself over the one against whom subrogation is sought to be enforced."); see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So. 2d 328, 332 (Fla. 3d DCA

1999).  Here, the parties dispute whether ZAIC or SOIC was primarily liable for the debt.

See generally ZAIC's Motion and SOIC's Motion.

Contribution, on the other hand, is meant "to distribute equally among those who have a common obligation, the burden of performing that obligation." Schrank v. Pearlman, 683 So. 2d 559, 561 (Fla. 3d DCA 1996) (citing Fletcher v. Anderson, 616 So. 2d 1201, 1202 (Fla. 2d DCA 1993)).

> [C]ontribution … is based on a principle of justice and equity, that one person should not be singled out by the creator to pay the whole demand; and where this occurs, the law intervenes … and gives the party paying a remedy by action for contribution.  This right of action grows out of an implied agreement, that if one … shall be compelled to pay the whole, or a disproportionate part of the debt, the other shall pay such a sum as shall render their common burden equal.

Love v. Gibson, 2 Fla. 598, 618-19 (Fla. 1849); see also Meckler v. Weiss, 80 So. 2d 608, 609 (Fla. 1955) (recognizing contribution as the general rule between co-obligors); Desrosiers v. Russell, 660 So. 2d 396, 398 (Fla. 2d DCA 1995) ("When a person pays more than his share of a common obligation, the law gives him the remedy of contribution to obtain from the other obligors payment of their respective shares of the obligation.").

Generally, for an insurer to prevail on an equitable contribution claim against a co-insurer, the insurers must "share (1) the same level of obligation (2) on the same risk (3) to the same insured." U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., No. 6:06-cv-1180-Orl-31UAM, 2007 WL 3275307, at *3 (M.D. Fla. Oct. 31, 2007) (citing Lexington Ins. Co. v. Allianz Ins. Co., 177 F. App'x 572, 573 (9th Cir. 2006)).  However, Florida courts do not strictly adhere to these elements, and an insurer may prevail under the doctrine "where the parties share a 'common burden,' or 'common liability.'" U.S. Fid. & Guar. Co., 2007 WL 3275307, at *3 (citation omitted).  In order to find that two insurers share a common

obligation, "[i]t is not necessary that the policies provide identical coverage in all respects." 15 Couch on Ins. § 218:6 (Dec. 2016). Equitable contribution is appropriate "as long as the particular risk actually involved in the case is covered by both policies." Id.

Resolution of both of ZAIC's claims in this action requires the Court to determine what obligations, if any, SOIC owed to Catamount with respect to the claims raised by McMillan in the Underlying Action. Pursuant to Florida law, "interpretation of an insurance policy is a question of law to be decided by the court." Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1174 (11th Cir. 1985) (applying Florida law). In so doing, the court must construe the "contract in its entirety, striving to give every provision meaning and effect." Dahl-Eimers v. Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1382 (11th Cir. 1993) (citing Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979)). Where a term in an insurance policy is ambiguous, a court must "construe it in favor of the insured and against the insurer." Gas Kwick, Inc. v. United Pac. Ins. Co., 58 F.3d 1536, 1539 (11th Cir. 1995) (citing Davis v. Nationwide Life Ins. Co., 450 So. 2d 549, 550 (Fla. 5th DCA 1984)). However, a "court cannot rewrite an insurance contract to extend coverage beyond what is clearly set forth in the contractual language." Szczeklik v. Markel Int'l Ins. Co., Ltd., 942 F. Supp. 2d 1254, 1260 (M.D. Fla. 2013) (quoting Fla. Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron, 721 So. 2d 825, 826 (Fla. 3d DCA 1998)). Although the insured bears the burden of proving that a claim is covered by the insurance policy, the "burden of proving an exclusion to coverage is . . . on the insurer." LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997). However, if there is an exception to the exclusion, "the burden returns to the insured to prove the exception and show coverage." See Mid-Continent Cas. Co. v. Frank Casserino Constr.,

Inc., 721 F. Supp. 2d 1209, 1215 (M.D. Fla. 2010); see also LaFarge Corp., 118 F.3d at 1516; E. Fla. Hauling, Inc. v. Lexington Ins. Co., 913 So. 2d 673, 678 (Fla. 3d DCA 2005).

Once the Court interprets the terms of the ZAIC and SOIC Policies, it must determine, based on McMillan's claims, whether SOIC owed Catamount a duty to defend it in the Underlying Action and to indemnify it by paying the settlement amount. "Under Florida law, an insurer's duty to defend its insured against legal action is quite broad, and 'is determined by comparing the allegations contained within the four corners of the underlying complaint with the language of the policy.'" Addison Ins. Co. v. 4000 Island Blvd. Condo. Ass'n, Inc., 263 F. Supp. 3d 1266, 1269 (S.D. Fla. 2016) (quoting Jones v. Fla. Ins. Guar. Ass'n Inc., 908 So. 2d 435, 443 (Fla. 2005)). That is, an insurer's duty to defend is determined solely by the allegations in the underlying complaint. See Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co., 76 So. 3d 20, 23 (Fla. 1st DCA 2011); see also Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995). "The duty arises when the relevant pleadings allege facts that 'fairly and potentially bring the suit within policy coverage.'" Lawyers Title Ins. Corp., 52 F.3d at 1580 (quoting Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993)). The actual facts of the situation are not relevant, such that "the insurer must defend even if facts alleged are actually untrue or legal theories unsound." Id. As a result, "an insurer's duty to defend is distinct from, and broader than, the duty to indemnify," Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009), which "must be determined by analyzing the policy coverage in light of the actual facts in the underlying case," see J.B.D. Constr., Inc. v. Mid-Continent Cas. Co., 571 F. App'x 918, 927 (11th Cir. 2014) (emphasis added). In addition, where an injured party "alleges facts partially within

and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." Category 5 Mgmt. Grp., LLC, 76 So. 3d at 23. Distinctly, an insurer is only obligated to indemnify its insured for the portion of a judgment or settlement attributable to a covered claim. See Highland Holdings, Inc. v. Mid-Continent Cas. Co., No. 8:14-cv-1334-T-23TBM, 2016 WL 3447523, at *2 (M.D. Fla. June 23, 2016), aff'd, 687 F. App'x 819 (11th Cir. 2017). Significantly, "[i]f an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." Lawyers Title Ins. Corp., 52 F.3d at 1580-81.

## IV.     Motion for Judicial Notice

Before turning to the merits of the parties' contentions regarding coverage, the Court must address SOIC's Motion for Judicial Notice. SOIC requests that the Court take judicial notice of the Underlying Action Docket and State Court Order pursuant to Rule 201(b) of the Federal Rules of Evidence. See generally Motion for Judicial Notice. SOIC contends that "[s]tate court orders are not subject to reasonable dispute," and "federal courts routinely take judicial notice" of such orders. Id. at 2. In response to this request, ZAIC contends that the Federal Rules of Evidence do not authorize federal courts "to issue a ruling based upon a finding of fact from a lower state court." See ZAIC's Opposition at 7.[8] Notably, ZAIC does not oppose SOIC's request that the Court take judicial notice of the Underlying Action Docket. See generally id.

---

[8]     In their filings both SOIC and ZAIC refer to the state court as a "lower" court or as the "court below." See id.; SOIC's Response at 4. The Court reminds counsel that a state trial court is by no means a "lower court," but rather is a court of equal dignity. See Pompey v. Broward Cnty., 95 F. 3d 1543, 1550 (11th Cir. 1996) ("The state courts are courts of equal dignity with all of the federal 'inferior courts'—to use the Framers' phrase . . .").

Rule 201(b) of the Federal Rules of Evidence allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Notably, courts may take judicial notice of documents from a prior proceeding because they are matters of public record and "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010). However, a "'court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (quoting Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992)). As such, "a court may take judicial notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." Jones, 29 F.3d at 1553. Therefore, the Court will take judicial notice of the State Court Order for the limited purpose of recognizing that Judge Cole entered the order, but not for the truth of the determinations made in that order.

Additionally, the Court will take judicial notice of the Underlying Action Docket, which is an accurate public record. Although the Court will take judicial notice of the docket and documents filed to determine that such documents were filed and that the parties and the court took certain actions, it will not take notice of the facts contained within those documents. See id.; see also Kruse, Inc. v. Aqua Sun Invs., Inc., No. 6:07-cv-1367-Orl-19UAM, 2008 WL 276030, at *3 n.2 (M.D. Fla. Jan. 31, 2008) ("Pursuant to Federal Rule

of Evidence 201, the Court is taking judicial notice of the state case and its docket entries, . . . but not of the facts contained in those documents."). Accordingly, the Motion for Judicial Notice is due to be granted, to the extent explained here, and otherwise denied.

## V.    Discussion

### A.  Count I – Claim for Equitable Subrogation

#### i.  Duty to Defend

With regard to ZAIC's claim that it is entitled to equitable subrogation, the critical dispute between the parties is whether ZAIC's policy or SOIC's policy provided the primary coverage for the claims against Catamount in the Underlying Action.  In this regard, SOIC's contention is simply that the claims raised by McMillan in the Underlying Action did not trigger its duties under the Endorsement in the policy it issued to Duval.  As such, SOIC contends it could not be primarily liable, because it owed Catamount no duty at all.  Thus, the Court must determine whether SOIC owed Catamount a duty to defend, and if so, whether SOIC's policy provided primary coverage for the claim defended against and resolved by ZAIC on Catamount's behalf.

As discussed, in order to determine whether SOIC owed Catamount a duty to defend under the SOIC Policy, the Court must "compar[e] the allegations contained within the four corners of the underlying complaint with the language of the policy.'" Addison, 263 F. Supp. 3d at 1269 (quoting Jones, 908 So. 2d at 443).  Here, the parties disagree as to whether the Court should consider the Underlying Amended Complaint or the Underlying Second Amended Complaint to determine SOIC's coverage obligations.  See SOIC's Response at 11-13; ZAIC's Reply at 4-5.  On January 6, 2015, McMillan filed an unopposed motion seeking leave to file the Underlying Second Amended Complaint.  See McMillan's

20

Motion to Amend. However, because the state court never entered an order resolving McMillan's Motion to Amend, see generally Underlying Action Docket, SOIC contends that the Underlying Amended Complaint is operative for purposes of determining its coverage obligations, see SOIC's Response at 11-13. Conversely, ZAIC contends that the Court should consider the Underlying Second Amended Complaint because the parties have litigated based on that pleading, and "SOIC cannot now attempt to rely on what appears to have been little more than administrative oversight in the Underlying Action to defeat coverage." See ZAIC's Reply at 5.

Under Florida law, it is settled that "[c]overage is determined from examining the most recent amended pleading, not the original pleading." Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co., 657 F.3d 1135, 1142 (11th Cir. 2011) (citation omitted). For purposes of determining an insurer's duty to defend an insured, a proposed amended pleading is not considered operative. See Century Surety Co. v. Hallandale Beach Serv. Station LLC, No. 10-21430-CIV-JORDAN, 2011 WL 13174906, at *2 n.1 (S.D. Fla. Mar. 21, 2011); Mid-Continent Cas. Co. v. Constr. Servs. & Consultants, Inc., No. 06-CV-80922, 2008 WL 896221, at *4 n.1 (S.D. Fla. Mar. 31, 2008). However, "the 'eight corners rule'[9] does not relieve an insurer of the duty to defend if a complaint's initially-uncovered allegations are expanded—through formal amendment or even through the parties' explicit or implicit construction of the existing complaint—to include covered claims." Evanston Ins. Co. v. Royal Am. Constr. Co., No. 5:07-cv-34-RH/MD, 2007 WL 4240749, at *4 (N.D. Fla. Nov. 29, 2007) (citing C.A. Fielland, Inc. v. Fid. & Cas. Co. of N.Y., 297 So. 2d 122, 127 (Fla. 2d

---

[9] The "eight corners rule" refers to the limits of a court's review in determining a duty to defend which must focus on the "four corners of the policy and the four corners of the complaint." Colony Ins. Co. v. Barnes, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005) (collecting cases).

DCA 1974)); see also Broward Marine, Inc. v. Aetna Ins. Co., 459 So. 2d 330, 331 (Fla. 4th DCA 1984). That is, "the allegations of the complaint are not conclusive on the issue. The duty to defend may attach at some later stage of the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage." C.A. Fielland, 297 So. 2d at 127 (quotation omitted).

Here, the Court finds that the Underlying Second Amended Complaint is the operative pleading with respect to the question of coverage for claims raised in the Underlying Action. Pursuant to the Florida Rules of Civil Procedure, a party may amend a pleading only "by leave of court or by written consent of the adverse party." See FLA. R. CIV. P. 1.190(a). Although the state court did not enter an order ruling on McMillan's Motion to Amend, SOIC does not dispute that all the defendants in the Underlying Action, including Duval, consented to the filing of the Underlying Second Amended Complaint. See generally Underlying Action Docket. Not only does Duval fail to dispute that McMillan's Motion to Amend was unopposed, see McMillan's Motion to Amend at 2 ¶5, but all defendants, including Catamount and Duval, treated the Underlying Second Amended Complaint as having been properly filed – in that each filed answers to the Underlying Second Amended Complaint and actively litigated the case based on the allegations of the Underlying Second Amended Complaint. See generally Underlying Action Docket. Having done so, SOIC, which stands in the shoes of Duval, cannot now be heard to claim that the Underlying Second Amended Complaint was not the pleading that governed the parties' obligations in the Underlying Action. Indeed, SOIC acknowledges that prior to Judge Cole's entry of the State Court Order on September 29, 2017, none of the parties in the Underlying Action or this action even realized that the state court had not entered an order

22

granting McMillan's Motion to Amend. <u>See</u> SOIC's Response at 2-3. Based on the somewhat unusual record in the Underlying Action, the Court determines as a matter of law that the allegations in the Underlying Second Amended Complaint are determinative of the coverage obligations to be resolved in this action.

Alternatively, and in an abundance of caution, the Court concludes that even if the Underlying Second Amended Complaint was not the operative pleading due to the lack of "formal amendment," its filing significantly "changed or enlarged" the issues litigated by the parties in the Underlying Action such that it became the operative pleading for purposes of determining SOIC's duty to defend Catamount. <u>See</u> <u>Evanston</u>, 2007 WL 4240749 at *4; <u>C.A. Fielland</u>, 297 So. 2d at 127. Notably, in the Underlying Amended Complaint, McMillan did not assert any claims against Duval, mention Duval by name, make any factual allegations regarding Duval's concrete cutting work or its presence on the premises, or identify Duval's work as a potential cause of the debris. <u>See generally</u> Underlying Amended Complaint. However, in the Underlying Second Amended Complaint, McMillan asserted a negligence claim against Duval and specifically alleged that Duval's concrete cutting work contributed to the accumulation of debris that caused him to fall. <u>See</u> Underlying Second Amended Complaint ¶¶34-42. Thus, because the Second Amended Complaint significantly enlarged the scope of the issues involved in the Underlying Action by identifying Duval as the cause (or potential cause) of the accumulated debris, the Court would find its allegations determinative of SOIC's coverage obligations. Thus, the Court now turns to the merits of the parties' contentions regarding SOIC's duty, if any, to Catamount for the claims raised in the Underlying Second Amended Complaint.

The Endorsement in the SOIC policy provides that "[a] person or organization is an Additional Insured, only with respect to liability arising out of 'your work' for that Additional Insured by or for you [Duval]… If required in a written contract or agreement." See Endorsement. ZAIC contends that in the Underlying Second Amended Complaint, McMillan alleged a claim against Catamount that arose from Duval's work because McMillan specifically pled that he slipped on a pile of debris in the area where Duval performed concrete cutting work. See ZAIC's Motion at 2. However, SOIC contends that McMillan did not allege that Catamount's liability arose out of Duval's work because McMillan sued Catamount for Catamount's own negligence rather than on "theories of vicarious, constructive, derivative, or technical liability . . . based upon the active fault of Duval Concrete." See SOIC's Motion at 16.[10] SOIC further contends that the doctrine of collateral estoppel precludes ZAIC from relitigating the basis of McMillan's claim against Catamount because ZAIC is bound by Judge Cole's finding in the State Court Order on Catamount's indemnity claim in which the state court determined that McMillan sued Catamount "for direct liability arising out of negligent acts by Catamount rather than for vicarious liability arising out of negligent acts by." See SOIC's Response at 6-11; State Court Order at 4. Thus, in order to resolve the Motion, the Court must determine the

---

[10]     SOIC also refers the Court to the arguments raised in its "previous motions and responses" regarding ZAIC's status as an excess insurer. See SOIC's Response at 10. However, this incorporation by reference is inappropriate. Local Rule 3.01(b) of the Local Rules, United States District Court, Middle District of Florida, requires a party opposing a motion to file a response indicating their grounds for opposing the requested relief "in a document not more than twenty (20) pages." Not only does this practice violate the Local Rules, but it "puts the onus on the Court (and opposing party) to slog through [SOIC's] voluminous material to glean support for [SOIC's] argument." Jones v. Tauber & Balser, P.C., 503 B.R. 162, 177 (N.D. Ga. 2013). "Neither the Court, nor [ZAIC] have a duty to scour [SOIC's] other filings to discern what [it] believe[s] specifically supports [its] arguments here." Id.; see also Mobile Shelter Sys. USA, Inc. v. Grate Pallet Solutions, LLC, 845 F. Supp. 2d 1241, 1253 (M.D. Fla. 2012), aff'd in part, 505 F. App'x 928 (11th Cir. 2013).

meaning of the phrase "liability arising out of" as it is used in the Endorsement, and measure McMillan's allegations against that meaning.

Preliminarily, the Court notes that the Eleventh Circuit has recognized that under Florida law, the phrase "arising out of," by itself, is unambiguous in terms of the degree of causation required and "should be interpreted broadly."  See James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008) (citing Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 539 (Fla. 2005)).  Further, the Florida Supreme Court has "declared that 'the term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'"  James River, 540 F.3d at 1275 (quoting Taurus, 913 So. 2d at 539).  "To have arisen out of something, there must be 'some causal connection or relationship' that is 'more than a mere coincidence' but proximate cause is not required."  James River, 540 F.3d at 1275 (quoting Taurus, 913 So. 2d at 539).  Indeed, "'the phrase 'arising out of' contemplates a more attenuated link than the phrase 'because of.'"  James River, 540 F.3d at 1275 (quoting Garcia v. Fed. Ins. Co., 969 So. 2d 288, 293 (Fla. 2007)).

While the phrase "arising out of" by itself is not ambiguous, courts applying Florida law have found insurance policies providing coverage to an additional insured for liability or damages "arising out of" the work of the primary (or named) insured to be potentially ambiguous with respect to whether the additional insured must be covered for its own negligence or only its vicarious liability for the negligence of the named insured.  See Monticello Ins. Co. v. City of Miami Beach, No. 06-20459-CIV, 2009 WL 667454, at **8-9 (S.D. Fla. Mar. 11, 2009) (finding an additional insured endorsement ambiguous as to its

scope of coverage as it could be read to provide coverage only for the additional insured's vicarious liability caused by the named insured's negligence or to cover the additional insured's own negligence if the claim had some connection to the work of the named insured); Koala Miami Realty Holding Co. v. Valiant Ins. Co., 913 So. 2d 25, 27 (Fla. 3d DCA 2005) (finding the phrase "liability arising out of" ambiguous with regard to "whether it is the named insured's or the additional insured's own negligence which is covered.").

In such cases, following the guidance of Fla. Power & Light Co. v. Penn Am. Ins. Co., 654 So. 2d 276 (Fla. 4th DCA 1995) and Container Corp. of Am. v. Md. Cas. Co., 707 So. 2d 733, 737 (Fla. 1998), quashing, 687 So. 2d 273 (Fla. 1st DCA 1997), courts have determined that in the absence of clear policy language limiting coverage to vicarious liability, the additional insured was entitled to coverage for its own negligence. Monticello, 2009 WL 667454, at **8-11; Koala Miami Realty Holding Co., 913 So. 2d at 27. Although the precise language of the policy at issue in Fla. Power & Light Co. is slightly different, the court's analysis is instructive. There, Penn America Insurance Company (Penn America) issued an insurance policy to Eastern Utility Construction, Inc. (Eastern), a subcontractor, and covered Florida Power & Light (FPL) as an additional insured "only with respect to operations by or on behalf of the Named Insured or to facilities used by the Named Insured." Id. at 277. In the underlying action, an Eastern employee sued FPL for direct negligence. Ultimately, the court found that "because Penn America did not utilize specific language limiting coverage to the vicarious liability situation and because the language actually utilized [wa]s ambiguous at best, the 'additional insured' provision must be construed against Eastern and in favor of FPL." Id. at 279.

The Florida Supreme Court reached the same conclusion in <u>Container Corp. of Am.</u>. In doing so, the court looked to the <u>Fla. Power & Light Co.</u> decision for guidance and discussed decisions from other jurisdictions interpreting similar additional insured policy provisions. Consistent with those decisions, the court determined that "had [the Insurer] Maryland wished to limit [the additional insured] Container's coverage to vicarious liability, it could have done so." <u>Id.</u> at 736. Because the additional insured endorsement did not contain "limiting language," <u>Container Corp.</u>, 707 So. 2d at 736, the additional insured was entitled to coverage for "its own negligence arising out of operations at operations site by [the Named Insured]." <u>Id.</u> These cases instruct that where a policy of insurance provides coverage to an additional insured for "liability arising out of" the operations, work, or similar language, of a named insured, it is not necessary for the named insured to have "caused" the liability for a coverage obligation to trigger. <u>See Amerisure Ins. Co. v. Orange & Blue Constr., Inc.</u>, 913 F. Supp. 2d 1363, 1370 (S.D. Fla. 2012). In such cases, "in the absence of clear policy language limiting coverage to vicarious liability, the additional insured [is] entitled to coverage for its own negligence." <u>Id.</u>; <u>Monticello</u>, 2009 WL 667454, at **10-11; <u>Koala Miami Realty</u>, 913 So. 2d at 27.

The Court does not find SOIC's case-law to the contrary persuasive. First, SOIC relies on <u>White Springs Agric. Chems., Inc. v. Gaffin Indus. Servs., Inc.</u>, No. 3:11-cv-998-J-32JRK, 2014 WL 905545 (M.D. Fla. Mar. 7, 2014). <u>See</u> SOIC's Motion at 16-17. <u>White Springs</u> is inapplicable because there the policy at issue expressly did what SOIC failed to do, it limited coverage to actions where the "sole allegation" against the additional insured was "vicarious liability for the sole negligence of" the named insured. <u>White Springs</u>, 2014 WL 905545 at *3. Additionally, SOIC relies on <u>Cmty. Asphalt Corp. v. Travelers Indem.</u>

Co. of Am., No. 16-21758-CIV-LENARD/GOODMAN, 2017 WL 4712199 (S.D. Fla. Apr. 26, 2017). See SOIC's Motion at 17-20. However, Cmty. Asphalt is also inopposite because the endorsement at issue limited coverage to injuries "caused by acts or omissions" of the named insured, language which is narrower than damages "arising out of" a named insured's work. See Cmty. Asphalt, 2017 WL 4712199 at *2; see Taurus, 913 So. 2d at 539 (noting that the term "arising out of" is not ambiguous and broader than the term "caused by").

Further, contrary to SOIC's contention, Atl. Marine Fla, LLC v. Evanston Ins. Co., 775 F.3d 1268 (11th Cir. 2014), does not support a conclusion that SOIC is only obligated to cover Catamount for vicarious liability based on Duval's negligence. See SOIC's Motion at 20-21. In Evanston, the Eleventh Circuit interpreted an endorsement obligating the insurer to pay a judgment against the subcontractor based on the general contractor's negligent engineering and design services rather than the subcontractor's installation services. Id. at 1278. The court held that the subcontractor was not entitled to a defense as a third party beneficiary because the insurer could not have intended to fund the subcontractor's cross-claim against the general contractor to establish that the general contractor caused the injury. Id. at 1279.

However, Evanston does not speak to the issues before the Court. Here, the parties dispute SOIC's coverage obligations to Catamount as an additional insured rather than as a third-party beneficiary, but there is no dispute that SOIC has a duty to defend, not simply indemnify, an additional insured for claims falling within the coverage of the policy. See SOIC Policy at 21 §1(a). Further, unlike the Evanston parties who contributed to the plaintiff's injuries in entirely different ways, (ie, negligent design and negligent installation),

McMillan sued both Catamount and Duval for negligently creating and failing to remove the same accumulation of debris. Thus, unlike the Evanston insurer, SOIC would not have "found itself in a conflict of interest" had it assumed Catamount's defense. See Evanston, 775 F.3d at 1279.

Ultimately, the Court, persuaded by Fla. Power & Light, Container Corp. of Am., and the consistent authority following those decisions, finds that the Endorsement either expressly fails to limit its coverage to vicarious liability, or is, at best, ambiguous as to whether SOIC's coverage obligations are limited to claims based on vicarious liability. Because ambiguous policies are to be interpreted broadly in favor of coverage, the Court will not read a vicarious liability limitation into the Endorsement. See Gas Kwick, 58 F.3d at 1539. Had ZAIC wished to limit Catamount's coverage to claims of vicarious liability only, it certainly could have done so. Indeed, its need to include such limiting language should have been readily apparent to SOIC in April of 2011 when it issued the policy given that Fla. Power & Light Co. was decided in 1995 and the Florida Supreme Court decided the Container Corp. of Am. case in 1998. See Monticello, 2009 WL 667454, at **10-11. Because ZAIC did not include language limiting its coverage to Catamount to vicarious liability, it cannot now seek such a restrictive view of its coverage obligations. Here, the Court finds that Catamount was entitled to a defense against all allegations that "originat[ed] from," were "incident to," or "ha[d] a connection with," Duval's work. Taurus, 913 So. 2d at 539. As such, the Court need not determine whether Judge Cole's finding that McMillan sued Catamount for direct negligence and not under a theory of vicarious liability for Duval's negligence is entitled to preclusive effect under the doctrine of collateral

estoppel.[11]  The issue before the Court is whether McMillan's allegations suggest that Catamount's liability arose out of Duval's work, which is not dependent on any a theory of vicarious liability.

The Court finds that McMillan's allegations were sufficient to trigger SOIC's duty to defend Catamount because they raised the possibility that Catamount's liability arose from Duval's work.  See Grissom v. Commercial Union Ins. Co., 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992) ("So long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit.").   In the Underlying Second Amended Complaint, McMillan alleged that while visiting the Site, he slipped and fell on an accumulation of debris in an area where Catamount established a construction site and where "Duval had previously begun concrete cutting work."  Id. ¶¶28, 37.  McMillan further alleged that Catamount and Duval knew about the accumulation, id. ¶¶30, 39, but breached their duties of care owed to McMillan by:

> e) failing to properly instruct their respective employees, agents, and/or servants as to the proper care and maintenance of the outer areas and walkways, and thereby knowingly permitting a dangerous condition(s) to remain on the premises to the peril of the Plaintiff, and/or
>
> f) failing to provide reasonable and adequate warnings of the actually or constructively known dangerous condition(s) and/or the potential for danger and injury to the Plaintiff, and/or
>
> g) failing to operate or maintain the premises in a reasonably safe condition for protection of the Plaintiff. [sic]

---

[11]     Even were the Court to consider the issue, the Florida Supreme Court's Container Corp. of Am. decision would certainly counsel against utilizing the interpretation of an indemnity contract as preclusive with regard to the interpretation of the scope of coverage under an insurance policy. See Container Corp. of Am., 707 So. 2d at 735 (noting that the indemnity language of a contract was not determinative of the coverage issue pursuant to an additional insured provision in a policy of insurance).

> h) failing to maintain the outer area of the Defendant's business was [sic] caused a debris/slip condition and failing to provide a safe, slip-free walkway surface.

Id. ¶¶31, 40. McMillan's claim against Catamount for its own negligence does not preclude the possibility that Catamount's liability could be connected to, originate from, or grow out of, Duval's concrete cutting work. See Category 5 Mgmt. Grp., LLC, 76 So. 3d at 23 (even if a complaint alleges claims "partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit."). Indeed, Duval is alleged to have been cutting concrete in the area where McMillan slipped and to have known about the accumulation of debris in that area. Id. ¶37, 39. At the very least, McMillan's allegations suggest that there was "more than a mere coincident" "causal connection or relationship" between Catamount's liability and Duval's concrete cutting work. See Taurus, 913 So. 2d at 539. Accordingly, the Court finds that the allegations in the Underlying Second Amended Complaint triggered SOIC's duty to defend Catamount. Because Catamount was an additional insured under the SOIC Policy and entitled to primary coverage from SOIC, see Endorsement, ZAIC was only obligated to provide excess coverage to Catamount, see ZAIC Policy (Doc. 88-3) at 58 ¶4(2). Moreover, pursuant to the plain terms of the ZAIC Policy, as an excess insurer ZAIC had no duty to defend Catamount. See id.; see also Nat'l Union Fire Ins. Co., of Pittsburgh, Pa. v. Travelers Ins. Co., 214 F. 3d 1269, 1272-73 (11th Cir. 2000) (finding that an excess insurer's "duty to defend was consecutive to, rather than concurrent with, any other underlying insurer's duty to defend," based on the terms of the policy).

The undisputed facts before the Court reflect that ZAIC expended sums in defense of, and to settle McMillan's claim against its insured, Catamount, to protect Catamount's

interest.  In doing so, ZAIC did not act as a volunteer.  SOIC, not ZAIC, was primarily liable for providing a defense to Catamount.  And ZAIC paid the entire amount of Catamount's debt.  Additionally, the Court identifies no facts suggesting that a finding of subrogation in this action would work any injustice to the rights of a third party.  See Dade Cnty. Sch. Bd. V. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999) (setting forth the elements of a claim for equitable subrogation).  As such, ZAIC is entitled to entry of summary judgment in its favor as to its claim for equitable subrogation, and the Court turns to the question of what sums are due to be included in the judgment.

### ii.  Reimbursement for Defense Costs

"[W]hile an insurance company is within its rights in making a thorough investigation to determine whether the accident in question comes within the coverage of its policy, the company acts at its peril in refusing to defend its insured and will be held responsible for the consequences."  Fla. Farm Bureau Mut. Ins. Co. v. Rice, 393 So. 2d 552, 555-56 (Fla. 1st DCA 1980).  These damages include reasonable attorney's fees and defense costs, as well as collateral damages resulting from the breach.  See MCO Envtl. Inc. v. Agric. Excess & Surplus Ins. Co., 689 So. 2d 1114, 1116 (Fla. 3d DCA 1997); see also Fla. Ins. Guar. Ass'n, Inc. v. All the Way with Bill Vernay, Inc., 864 So. 2d 1126, 1129 (Fla. 2d DCA 2003) (collecting cases); Seitlin & Co. v. Phoenix Ins. Co., 650 So. 2d 624, 626 (Fla. 3d DCA 1994); Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n, 483 So. 2d 513, 516 (Fla. 3d DCA 1986).  Thus, "[w]here, of the two insurers covering the accident one affords primary and the other secondary coverage, and the secondary insurer supplies the defense, it can recover its defense costs from the primary insurer."  Allstate Ins. Co. v. RJT Enters., Inc.,

692 So. 2d 142, 146 (Fla. 1997) (quoting 14 George J. Couch, <u>Couch on Insurance</u> 2d §
51:148, at 701 (1982)).

Before considering the amount of attorney's fees and costs attributable to SOIC's
breach, the Court notes that in SOIC's Response, filed on October 20, 2017, SOIC
contends that entry of judgment on damages would be premature given the ongoing nature
of discovery. <u>See</u> SOIC's Response at 14. This contention, however, lacks merit because
SOIC failed to comply with the requirements of the applicable Rule, and because the
history of this litigation refutes its purported need for additional discovery. Specifically,
Rule 56(d) provides:

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons,
> it cannot present facts essential to justify its opposition, the court may: (1)
> defer considering the motion or deny it; (2) allow time to obtain affidavits or
> declarations to take discovery; or (3) issue any other appropriate order.

Here, SOIC has not provided an affidavit or declaration for the Court's review, nor has it
made any effort to identify what information it was unable to present at the time of its filing.
Additionally, SOIC's request is insufficient because despite its contention that it has not
deposed ZAIC's fee expert regarding "[t]he timing of the fees and costs incurred in the
Underlying Suit," SOIC fails to specify what information it might obtain from ZAIC's fee
expert that it cannot obtain from ZAIC's Bill Analysis Report and the other information
already in its possession. <u>See</u> SOIC's Response at 14. The parties in this case were
authorized to conduct discovery in this action beginning on November 16, 2015, <u>see</u> Case
Management Report (Doc. 18), and discovery closed on October 31, 2017. As such, SOIC
had almost two full years before the filing of ZAIC's Motion to obtain any information it
needed. Further, even after the close of discovery, SOIC did not seek leave to file a
surreply to ZAIC's Reply, which addresses the discovery issue, or to supplement the record

with newly discovered evidence. Moreover, in SOIC's Motion, filed on November 20, 2017, SOIC does not assert that any of ZAIC's attorney's fees and defense costs are non-recoverable. See generally SOIC's Motion. Accordingly, SOIC's suggestion that entry of summary judgment would be premature is without merit.

Here, because the Court finds, as a matter of law, that SOIC owed Catamount a duty to defend and breached that duty, it is liable to ZAIC for the defense costs and attorney's fees incurred and paid on Catamount's behalf. In the SOIC Response, SOIC fails to raise any genuine issue of fact with regard to the reasonableness of the attorney's fees and costs incurred and paid by ZAIC in defending Catamount. Indeed, because ZAIC actually paid the fees and costs, they are presumed to be reasonable, and SOIC has failed to point to any facts that might arguably rebut such a conclusion. Thus, the Court finds that the attorney's fees and costs expended by ZAIC in Catamount's defense are reasonable and ZAIC is entitled to recover as damages for its claim for equitable subrogation all such fees and costs attributable to SOIC's breach of its duty to defend Catamount.

ZAIC's Bill Analysis Report reflects that ZAIC incurred and expended $83,474.82 in attorney's fees and defense costs since May 2, 2013, the date the court granted McMillan's Motion to file the Underlying Amended Complaint and add Catamount as a defendant. See generally Bill Analysis Report. However, although ZAIC bases its claim regarding SOIC's duty to defend on the allegations of the Underlying Second Amended Complaint, ZAIC appears to seek reimbursement for all of its attorney's fees without addressing the basis for its entitlement to fees incurred before McMillan asserted facts implicating Duval. For its part, SOIC asserts that, at most, ZAIC would be entitled to reimbursement only of fees

and costs incurred after the Second Tender. See SOIC's Response at 4-5. Neither party cites any legal authority for its position, nor does either attempt to calculate the portion of fees and costs incurred following the filing of McMillan's Motion to Amend or the Second Tender. The Court declines to attempt to make that calculation in the first instance. Rather, the Court will direct the parties to confer and attempt to reach an agreement as to the date from which the damages flowing from SOIC's breach of its duty to defend are to be calculated and the amount of attorney's fees and costs ZAIC is due to be reimbursed for its defense of Catamount in the Underlying Action. In doing so the Court cautions that at this stage of the proceeding, the only remaining question is the date on which the Court begins its calculation and the mathematical calculation of the total. If the parties are unable to agree, each shall file a supplemental brief on the issue of this element of damages with citations to the record, and applicable authority if necessary, no later than June 15, 2018.

### iii. Reimbursement for the Amount of the Settlement

Next, the Court will address SOIC's duty to indemnify ZAIC for the settlement amount. ZAIC paid $275,000.00 to settle McMillan's claims against Catamount. See Billing Report Analysis (Doc. 88-9) at 5 and (Doc. 88-12) at 37. However, SOIC contends that even if it were obligated to defend Catamount in the Underlying Action, there are "material facts in dispute with respect to apportionment of fault between Catamount and Duval Concrete." See SOIC's Response at 5. SOIC maintains that the SOIC Policy "does not provide indemnity for Catamount's own negligence," and therefore, "[t]he Court will have to weigh the facts/evidence in the Underlying Suit to determine what percent of Catamount's settlement payment to the Underlying Plaintiff is attributable to Duval Concrete's negligence, if any, and what percent is attributable to Catamount's negligence."

Id. at 5-6. In response, ZAIC contends that SOIC's failure to defend Catamount in the Underlying Action precludes SOIC from "seek[ing] to apportion the settlement amount paid by ZAIC after the fact." See ZAIC's Reply at 7.

Under Florida law, when an insurer refuses to defend and indemnify its insured for a covered claim, the insured, or its subrogee, is entitled to reimbursement for the judgment or settlement amount. See Nova Cas. Co. v. OneBeacon Am. Ins. Co., 603 F. App'x 898, 904 (11th Cir. 2015); Gallagher v. Dupont, 918 So. 2d 342, 347-48 (Fla. 5th DCA 2005); U.S. Auto. Ass'n v. Hartford Ins. Co., 468 So. 2d 545, 547 (Fla. 5th DCA 1985); Atl. Coast Dev. Corp. v. Napoleon Steel Contractors, Inc., 385 So. 2d 676, 681 (Fla. 3d DCA 1980). "Ordinarily, one who is not a party to a settlement agreement cannot be bound by its terms, but an exception applies where an insurer wrongfully refuses to defend its insured." Gallagher, 918 So. 2d at 348 (citing Ahern v. Odyssey Re (London) Ltd., 788 So. 2d 369, 371-72 (Fla. 4th DCA 2001)). In this situation, the insurer loses "its right to claim a defense that it otherwise could have raised in" the underlying action because the settlement "is conclusive against the . . . insurer as to all material matters determined therein," including the insured's liability. Gallagher, 918 So. 2d at 347-48; see also Category 5 Mgmt. Grp., LLC, 76 So. 3d at 24; Hartford Ins. Co., 468 So. 2d at 547; Atl. Coast Dev. Corp., 385 So. 2d at 681. However, the insurer may challenge a settlement on the ground that (1) "the parties settled in bad faith, fraudulently, collusively or without any effort to minimize the insured's liability," see U.S. Auto. Ass'n, 468 So. 2d at 547, or (2) the insurer had no duty to indemnify the settled claim, see Bradfield v. Mid-Continent Casualty Co., 143 F. Supp. 3d 1215, 1240 (M.D. Fla. 2015).

SOIC fails to properly challenge the settlement on either of the two permissible grounds. Although SOIC contends that it is only obligated to reimburse ZAIC for the portion of the settlement attributable to Duval's work, it fails to cite any legal authority to support its position. See SOIC's Response at 5-6. There is no dispute that McMillan's negligence claim was covered under the SOIC Policy. The Court does not face a situation where the parties settled multiple claims, only some of which were entitled to coverage. Cf. Highland Holdings, Inc. v. Mid-Continent Cas. Co., No. 8:14-cv-1334-T-23TBM, 2016 WL 3447523, at *2 (M.D. Fla. June 23, 2016) ("Because Highland Holdings settled more than the covered claims, Highland Holdings cannot recover the entire settlement amount."), aff'd, 687 F. App'x 819 (11th Cir. 2017). Moreover, nothing in the record suggests even an inference of bad faith, fraud or collusion. Even SOIC does not argue that material facts are in dispute as to such issues. Accordingly, the Court finds that ZAIC is entitled to recover the full amount of the settlement as damages for its claim for equitable subrogation.

### B. Count II – Alternative Claim for Contribution

As previously noted, although both ZAIC and SOIC seek entry of final summary judgment, neither specifically addresses the claim in Count II for contribution, the elements of such a claim,[12] or how the undisputed facts support or fail to support the entry of judgment on such a claim.[13] Moreover, ZAIC fails to address how on the record before the Court at this stage, the Court could resolve its request for a determination of the pro rata

---

[12] As noted previously, to prevail on an equitable contribution claim against a co-insurer, the insurers must "share (1) the same level of obligation (2) on the same risk (3) to the same insured." U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., No. 6:06-cv-1180-Orl-31UAM, 2007 WL 3275307, *3 (M.D. Fla. Oct. 31, 2007) (citing Lexington Ins. Co. v. Allianz Ins. Co., 177 F. App'x 572, 573 (9th Cir. 2006)).

[13] Notably, even in the pretrial stipulation filed by the parties on May 14, 2018, neither directly addresses the elements of, or issues to be resolved, with regard to ZAIC's alternative claim for contribution. See generally Joint Pretrial Stipulation (Doc. 107).

share of liability attributable to Catamount.  In light of the Court's resolution of the claim for equitable subrogation in Count I, any discussion of the contribution claim may be either academic or entirely moot.  Nevertheless, in an abundance of caution, the Court will allow the parties to confer and advise the Court whether ZAIC wishes to dismiss or abandon the contribution claim, or whether the parties, having failed to file properly supported motions for summary judgment on that claim, intend to proceed to trial to resolve the claim for contribution.  As the matter is set for trial on the Court's June trial term, the parties must file their notice by June 1.

## VI.    Request for Award of Fees in This Litigation Under Fla. Stat. § 627.428

In ZAIC's Motion, ZAIC contends that it is entitled to recover the attorney's fees incurred in this litigation pursuant to Florida Statute section 627.428.  See ZAIC's Motion at 22-24.  However, the Court finds that this request is premature.  "'The fundamental rule in Florida has been that an 'award of attorneys' fees is in derogation of the common law and that statutes allowing for the award of such fees should be strictly construed.'"  Ins. Co. of N. Am. v. Lexow, 937 F. 2d 569, 573 (11th Cir. 1991) (quoting Roberts v. Carter, 350 So. 2d 78, 78-79 (Fla. 1977)).  As such, "'[t]he trial court's jurisdiction to award an attorney fee to an insured is dependent upon the conditions imposed by the statute [Florida Statute section 627.428(1)].'"  Lexow, 937 F. 2d at 573 (quoting AIU Ins. Co. v. Coker, 515 So. 2d 317, 318 (Fla. 2d DCA 1987)).  A precondition to an award of such fees is the entry of a judgment against the insurer.  See Lexow, 937 F. 2d at 573 (quoting Travelers Indem. Co. v. Chisholm, 384 So. 2d 1360, 1361 (Fla. 2d DCA)).  Specifically, section 627.428 provides:

> (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or

the named beneficiary under a policy or contract executed by the insurer, the trial court . . . shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

. . .

(3) When so awarded, compensation or fees of the attorney shall be included in the judgment or decree rendered in the case.

Id. Further Rule 54(d)(3)(B)(i) provides that "[u]nless a statute or a court order provides otherwise, the motion [for attorney's fees] must be filed no later than 14 days after the entry of judgment." Rule 54(d)(3)(B)(i) (emphasis added); see also Local Rule 4.18 of the Local Rules, United States District Court, Middle District of Florida (Local Rule(s)). Here, the Court has not yet entered judgment. Thus, ZAIC's request for an award of attorney's fees and costs incurred in prosecuting this action is premature, and the Court declines to address the request at this time.[14]

## VII. Conclusion

Upon review, the Court finds that ZAIC's Motion is due to be granted as to its claim for equitable subrogation in Count I of the Third Amended Complaint. This is so because SOIC was obligated to defend Catamount in the Underlying Action, the SOIC Policy provided primary coverage for McMillan's claims in the Underlying Action, SOIC breached its duty to defend Catamount, ZAIC reasonably incurred attorney's fees and costs on behalf of Catamount as a result of the breach, and ZAIC is entitled to be reimbursed for its attorney's fees and costs as well as for the full amount paid in settlement of its claims in

---

[14]    In SOIC's Response, SOIC seeks to "incorporate" the arguments raised in its Motion to Dismiss into SOIC's Response. See SOIC's Response at 2. For reasons already discussed, this incorporation by reference is improper. See supra §V.A.i. at 24 n.10. In any event, this argument is moot because the Court denied SOIC's Motion to Dismiss. See Order Denying Motion to Dismiss.

the Underlying Action.  However, the Court will defer entry of judgment pending clarification as to the proper amount of attorney's fees incurred in defense of the Underlying Action that will be included in the judgment.  To the extent ZAIC seeks entry of summary judgment on its alternative claim in Count II for contribution or its claim for the attorney's fees and costs incurred in pursuing this action, ZAIC's Motion is due to be denied without prejudice.  In light of the Court's resolution of ZAIC's Motion, SOIC's Motion, seeking to establish that SOIC was not so obligated, is due to be denied.

Accordingly, it is **ORDERED**:

1. Defendant Southern-Owners Insurance Company's Motion Requesting the Court Take Judicial Notice of State Court Order and State Court Docket (Doc. 90) is **GRANTED** to the extent set forth in this Order, and otherwise **DENIED**.

2. Plaintiff, Zurich American Insurance Company's Motion for Final Summary Judgment (Doc. 88) is **GRANTED, in part, and DENIED, in part.**

   a. ZAIC's Motion is **GRANTED** to the extent that ZAIC seeks summary judgment as to liability on its claim for equitable subrogation and as to ZAIC's claim that it is entitled to recover its defense costs and attorney's fees incurred and paid on behalf of Catamount as a result of SOIC's refusal to defend Catamount, as well as the $275,000 paid to settle the Underlying Action.

   b. ZAIC's Motion is **DENIED without prejudice** in all other respects.

3. Defendant, Southern-Owners Insurance Company's Motion for Final Summary Judgment (Doc. 94) is **DENIED.**

4. The parties are directed to confer and attempt to reach an agreement as to the date from which the damages flowing from SOIC's breach of its duty to defend began and the amount of attorney's fees and costs ZAIC is due to be reimbursed for its defense of Catamount in the Underlying Action. If the parties are unable to agree, each shall file a supplemental brief on the issue of damages, with citation to applicable authority, if necessary, by **June 15, 2018**.

5. By **June 1, 2018**, ZAIC must advise the Court how it wishes to proceed with respect to the claim for contribution raised in Count II of the Third Amended Complaint.

**DONE AND ORDERED** at Jacksonville, Florida on May 21, 2018.

**MARCIA MORALES HOWARD**
United States District Judge

lc25
Copies to:
Counsel of Record